**John D. MARKS, Plaintiff,**

**v.**

**CENTRAL INTELLIGENCE AGENCY**

**and**

**William E. Colby, Director, Central Intelligence Agency, Defendants.**

**Civ. A. No. 75–1735.**

United States District Court,
District of Columbia,
Civil Division.

Nov. 3, 1976.

David A. Barrett, John H. F. Shattuck, Melvin L. Wulf, American Civil Liberties Union Foundation, New York City, Jerry J. Berman, Washington, D. C., for plaintiff.

John K. Villa, Sp. Asst. U. S. Atty., Robert N. Ford, Asst. U. S. Atty., Earl J. Silbert, U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### A. Background

The plaintiff, John D. Marks, on October 20, 1975, brought this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1970), as amended, 5 U.S.C. § 552 (Supp. IV 1974) [FOIA]. He seeks disclosure of "all files, dossiers, communications, computer printouts and other documents" concerning him which defendant Central Intelligence Agency [CIA] then, or in the past, maintained.

Forty-one documents were identified by the CIA as responsive to Marks' FOIA request. According to affidavits filed by the defendants, these materials were largely generated in the course of a national security intelligence investigation of the plaintiff, a former State Department employee with access to classified materials. That investigation was undertaken by the Office of Security, CIA, "when it learned that he [Marks] planned to publish a substantial quantity of classified information and when it was reported by sources that he was contacting present and former government employees in sensitive positions in an attempt to secure specific classified information from them." Twenty-seven of the items identified have been released to the plaintiff in their entireties or with uncontested deletions. Consequently, fourteen documents remain in issue, viz., Documents Nos. 6, 7, 10, 14, 16, 19, 20, 21, 22, 23, 25, 26, 27 and 29.[1]

Presently before the Court are plaintiff's motion for in camera review and defendants' motion for summary judgment.

### B. In Camera Review

■ Addressing first the motion for in camera review of the records in question, the Court rejects as unpersuasive plaintiff's suggestion that the various affidavits submitted in support of defendants' summary judgment motion are insufficiently detailed under the standards articulated in Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The Court of Appeals concluded in the Vaughn case that in order to test properly the classification of claims to exemptions under the FOIA, the government must provide to the district court (a) a "relatively detailed" analysis, in manageable segments, specifying the justifications for refusing to disclose information and (b) an itemization and indexing which would "correlate statements made in the Government's refusal justification with actual portions of the

1. Of these documents, ten have been released by the CIA with deletions (Nos. 10, 16, 19, 20, 21, 22, 23, 25, 26 and 27), and four have been withheld in toto (Nos. 6, 7, 14 and 29).

**710**

document." [2] 157 U.S.App.D.C. at 346–48, 484 F.2d at 826–28.

For the purposes of this litigation, defendants have numbered and concisely identified relevant agency records and exemptions invoked in the affidavit of Robert S. Young. A reasonably detailed statement of the nature of information relied upon as justification for non-disclosure of all or specific segments of each document, correlated to the numbering system of the Young affidavit, is contained in the affidavits of Robert W. Gambino and Charles W. Briggs. After careful review of these submissions and comparison with defendants' answers to interrogatories, the CIA's letters to plaintiff, and portions of the ten articles in issue which have been released to Marks, we are satisfied that the defendants' efforts to itemize and index relevant materials and to justify nondisclosure with reference to particular information are sufficient under the *Vaughn* criteria. Accordingly, *in camera* review is unnecessary [3] and the motion therefore is denied.

### C. *Summary Judgment*

Turning to defendants' motion for summary judgment, we note that the CIA has invoked three FOIA exemptions with respect to the fourteen relevant documents, *viz.,* 5 U.S.C. § 552(b)(1) [exemption 1], (b)(3) [exemption 3], and (b)(7) [exemption 7]. Marks has challenged the latter two exemptions as unavailable to the CIA as a matter of law.

### (1) *Exemption 3—5 U.S.C. § 552(b)(3)*

 Section 552(b)(3) provides that the FOIA's mandatory disclosure provisions do not apply to matters which are "specifically exempted from disclosure by statute." The defendants claim this exemption upon the authority of section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3) [NSA], or section 7 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g [CIAA], or both.[4] Marks concedes that section 7 of CIAA falls within the purview of the exemption but contends that section 102(d)(3) of NSA does not. However, plaintiff fails to recognize that both the Senate and Conference Reports on the 1974 FOIA amendments explicitly state the Congressional intent that section 102(d)(3) of NSA shall be considered an exemption 3 statute.[5] S.Rep. No. 93–854,

---

**2.** The Court in *Vaughn* noted in a *caveat* of particular relevance to the instant litigation that "[a]n analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." 157 U.S. App.D.C. at 346–47, 484 F.2d at 826–27 (footnote omitted).

**3.** Plaintiff's effort to impute an absence of good faith and due diligence to the defendants finds no support in the record of this action. Quite to the contrary, it is apparent that the CIA and its employees have consistently made reasonable, *bona fide* efforts to accommodate plaintiff's rights under the FOIA with legitimate national security interests. Moreover, where agency error in labeling or identification of records has resulted in delay, the defendants have promptly and voluntarily acknowledged and remedied discrepancies.

**4.** Section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3) provides in pertinent part:

. . . that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure.

Section 7 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g provides, in pertinent part, that

In the interests of the security of the foreign intelligence activities of the United States and in order to further implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of *section 654 of Title 5, and* the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency . . . .

**5.** The plaintiff has further argued that unless documents have been properly classified under Executive Order 11652, disclosure is permissible under sections 403(d)(3) and 403g. Stated differently, it is suggested that the CIA's exemption 3 claims must also meet the standards

93d Cong., 2d Sess. at 16 (1974); S.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News at p. 6290; *see FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); *Weissman v. CIA,* Civil Action No. 75–1583 (D.D.C. April 14, 1976); *Phillippi v. CIA,* Civil Action No. 75–1265 (D.D.C. December 1, 1975), *appeal docketed,* No. 76–1004 (D.C.Cir. December 3, 1975); *Richardson v. Spahr,* 416 F.Supp. 752 (W.D. Pa.1976). The Court therefore finds, contrary to the position taken by the plaintiff, that both sections 102(d)(3) of NSA and 7 of CIAA are "statute[s]" within the purview of exemption 3 of the FOIA.

(2) *Exemption 7—5 U.S.C. § 552(b)(7)*

■ Section 552(b)(7) provides, *inter alia,* that public disclosure under the FOIA is not required where the matters involved are:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . .

Marks has attacked the defendants' claim to exemption 7 arguing that materials generated in the course of a CIA national security intelligence investigation are not "investigatory records compiled for law enforcement purposes." Nothing we read in either the National Security Act or the FOIA, however, requires the suggested interpretation, and the language and legislative history of exemption 7 strongly suggest a different result.

Subsection (b)(7)(D) of the FOIA provides that a "lawful national security intelligence investigation" conducted by "an agency" is proper under exemption 7. Since (b)(7)(D) contains specific language which limits the more general terms of section (b)(7), the inclusion of such language in (b)(7)(D) indicates that Congress considered a "lawful national security investigation" conducted by an agency to be a "law enforcement purpose" for exemption 7 purposes.

Moreover, in the legislative history of the 1974 FOIA amendments, Congress acknowledged the validity of the CIA's use of national security intelligence investigations to protect sensitive information and endorsed the applicability of exemption 7 to records compiled in the course of such activities:

> The conference added language also protecting confidential sources by a criminal law enforcement authority in the course of a criminal investigation, *or by an agency conducting a lawful national security intelligence investigation.*

> The attempt here was to protect Federal Bureau of Investigation records, *Central Intelligence Agency records,* and the files of other Federal law enforcement agencies. "National security" was to be strictly construed to refer to military security, national defense, or *foreign policy.* The term "intelligence" was intended to apply to positive intelligence gathering activities, *counter intelligence activities,* and background security investigations by governmental units authorized to perform such functions. The Freedom of Information Act Amendments of 1974, "A History of the Legislative Proceedings," U.S.Cong. Joint Comm. Print, Sub-Comm. on Administrative Practice and

---

of exemption 1. We conclude, however, that the two exemptions are independent rather than interdependent and where exemption 3 has been properly invoked, exemption 1 need not be considered. *See Bachrack v. CIA,* No. CV 75–3727–WPG (N.D.Calif. May 10, 1976); *cf. Halperin v. Colby,* Civil Action No. 75–676 (D.D.C. June 4, 1976); *United States v. Richardson,* 418 U.S. 166, 178, n. 11, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

**712**

Procedure, 94th Cong., 1st Sess. (1975), at 115–116 (emphasis supplied).

The record in this action reflects that the national security intelligence investigation of the plaintiff was undertaken pursuant to the authority of 50 U.S.C. § 403(d)(3) to protect "intelligence sources and methods from unauthorized disclosure" by a former, highly placed government employee with Top Secret and Code Word clearances who had access to highly classified materials and who "has demonstrated and continues to demonstrate a predilection to divulge such material." The Court is of the opinion that records generated by the defendants in the course of that investigation are "investigatory records compiled for law enforcement purposes" under exemption 7.

**(3)** *Exemption 1—5 U.S.C. § 552(b)(1)*

█ Finally Marks has challenged certain deletions made by the CIA from materials supplied to him. The agency relies on exemption 1.

Exemption 1 permits non-disclosure of matters which are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and which are "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A) & (B). Nine of the documents[6] sought by Marks contain information which has been classified pursuant to Executive Order 11652, 3 C.F.R. 339, which authorizes non-disclosure where disclosure "could reasonably be expected to cause damage to the national security."[7] In eight instances,[8] defendants have deleted certain non-substantive information such as agency file numbers and markings, internal organizational ratings, communications transmission data, classification markings and sensitivity indicators, and the locations of foreign CIA stations. Plaintiff, on the other hand, insists that the CIA is required to divulge the locations of foreign agency installations to or from which these materials were sent since, in Marks' opinion "[s]uch information is unlikely to reveal anything not already known about CIA operations" and, thus, could result in no harm to foreign relations, or threat to national security.

We conclude, however, that official, public recognition of the locations of CIA stations abroad clearly "could be reasonably expected" to jeopardize the lives of American intelligence and diplomatic personnel in foreign nations and/or precipitate the expulsion of personnel and elimination of such stations, thereby resulting in palpable injury to the foreign relations of the United States. *See Knopf, Inc. v. Colby,* 509 F.2d 1362, 1366 (4th Cir.) *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1975). Accordingly, defendants' invocation of exemption 1 in such circumstances is justified.

**D. ORDER**

In light of the foregoing, it is hereby

ORDERED that plaintiff's motion for *in camera* review of the documents in question be and the same is hereby denied; it is further

ORDERED that the motion of the defendants for summary judgment be and the same is hereby granted.

6. Documents Nos. 16, 19, 20, 21, 22, 23, 25, 26 and 27.

7. "National security" is defined in section 1(c) of Executive Order 11652 as the "national defense or foreign relations of the United States."

8. Documents Nos. 19, 20, 21, 22, 23, 25, 26 and 27.