**ST. LOUIS POST–DISPATCH et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION et al., Defendants.**

**Civ. A. No. 75–1025.**

United States District Court, District of Columbia.

June 22, 1977.

On Opinion After In Camera Inspection—Sept. 23, 1977.

As Amended Dec. 7, 1977.

Mark Lynch, Washington, D. C., for plaintiffs.

Jason D. Kogan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This is an action arising under the Freedom of Information Act (hereinafter FOIA), 5 U.S.C. § 552 (Supp. V 1975). Plaintiffs, St. Louis Post-Dispatch, a daily newspaper, and Richard B. Dudman, the paper's Washington Bureau Chief, seek to compel disclosure of certain documents described as "any investigatory files" which defendants have retained in the past ten years pertaining to plaintiff Dudman personally or to the Washington Bureau of the St. Louis Post-Dispatch.[1] In particular, Mr. Dudman requested permission to view "whatever investigatory file led to the issuance of a subpoena on 13 August 1971 by the United States District Court for the District of Massachusetts for certain telephone records of my home telephone and the telephone of this bureau." Plaintiff Dudman's letter of February 19, 1975 to the Attorney General of the United States.

Mr. Dudman has been associated with the St. Louis Post-Dispatch since 1949 and became Bureau Chief of the paper's Washington Bureau in 1969. He has written numerous articles on foreign policy issues; interviewed foreign officials, including those representing Communist bloc countries; traveled abroad on assignment, including to China and Hanoi; arranged a trip to St. Louis for some Chinese journalists; and has given speeches about his experiences and observations in Indochina.

In June 1971, the St. Louis Post-Dispatch came into possession of copies of the Pentagon Papers, some of which it printed. Thereafter, Mr. Dudman learned that a Boston grand jury investigating the Pentagon Papers leak had subpoenaed the long distance call records of both his home telephone and the Washington office of the Post-Dispatch. Neither he nor the newspaper had any notice of the subpoenas. Mr. Dudman has also learned that the Post-Dispatch was among the newspapers on the 1971 White House "enemies list".

A substantial amount of material relating to these events has previously been released in whole or in part to plaintiffs. However, defendants are withholding 92 documents, or portions thereof, and claim they are exempt under 5 U.S.C. § 552(b)1, 2, 3, 5, 6, 7(C), 7(D) and 7(E). Defendants have divided these documents into three categories: A. the Dudman main file (22 documents); B. the Dudman "See Reference" file (58 documents which mention Mr. Dudman but are contained in files of other subjects); and C. the St. Louis Post-Dis-

---

1. Defendants indicate they were unable to locate any documents relating to the Washington Bureau of the St. Louis Post-Dispatch. Consequently, they broadened their search to include the St. Louis-Post Dispatch generally.

patch (12 documents).[2] In addition, defendants have provided the Court with document-by-document summaries of the factual descriptions of each document as those facts relate to the exemptions claimed and which have been presented in several affidavits and depositions, allegedly in conformance with the requirements of a detailed justification, itemization and indexing. *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973).

Of the aforementioned 92 documents, plaintiffs have withdrawn their request for 22 of them[3], and with regard to two additional documents[4], defendants have agreed to disclose those portions which plaintiffs seek.

This matter is currently before the Court, as to the remaining 68 documents, on defendants' motion for summary judgment; plaintiffs' opposition thereto, cross-motion for summary judgment, and motion for *in camera* inspection; and supplemental memoranda of both parties.

Defendants contend that there are no genuine issues as to any material fact and that they are therefore entitled to summary judgment as a matter of law. Plaintiffs, in both their opposition to defendants' motion and their cross-motion for summary judgment, allege that defendants have failed to carry their burden of proof that the documents being withheld fall within the claimed exemptions and that there are no segregable portions which can be released.[5] Plaintiffs concur in defendants' statement of material facts as to which there is no genuine issue for purposes of their cross-motion but simultaneously in their opposition claim that there *are* genuine issues of material fact which can only be resolved through *in camera* inspection.

■ The Court need not address this dispute in order to make a determination as to plaintiffs' request for *in camera* inspection. *In camera* inspection has clearly been recognized as appropriate in order to "resolve fundamental issues in contested cases," and to aid the Court in fulfilling its "congressionally imposed obligation to make a *de novo* determination of the propriety of a refusal to provide information in response to an FOIA request." *Phillippi v. CIA*, 178 U.S.App.D.C. 243, 546 F.2d 1009 (1976). *See, Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Additionally, the defect inherent in *in camera* review; namely, that it "is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure", is remedied here by the public justification, itemization and indexing[6] of the documents which will aid the Court in focusing "on the issues identified and clarified by the adver-

2. The three categories of documents appear as appendices A, B and C, respectively, to defendants' statement of material facts as to which there is no genuine issue. A given document will therefore be referred to by its appendix letter and the number assigned to the document within the appendix.

3. Plaintiffs have withdrawn their request for documents A–20, B–28, B–35, B–37, B–38, B–39, B–41, B–43, B–44, B–45, B–46, B–48, B–49, B–50, B–58, C–1, C–6, C–7, C–8, C–9, C–10 and C–11.

4. Documents C–2 and C–12.

5. The other issues plaintiffs focus on in their cross-motion for summary judgment concern documents C–2 and C–12, and the applicability of Exemption (b)(7)(D) to documents A–6, A–11, A–14, A–15, A–16, A–18, A–21, B–2, B–3, B–4, B–5, B–6, B–7, B–8, B–9, B–10, B–11, B–12, B–13, B–22, B–23, B–24, B–25, B–26. These issues are now moot since defendants have released those portions of documents C–2 and C–12 which plaintiffs seek and have withdrawn their claims of Exemption (b)(7)(D) to the above documents (except for document A–21). Defendants retain their claim that these documents should be withheld under Exemption (b)(1). Exemption (b)(7)(D) involves "investigatory records compiled for law enforcement purposes" to the extent they would "disclose the identity of a confidential source and . . . confidential information furnished only by the confidential source". Exemption (b)(1) relates to matters which are "(1)(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly qualified pursuant to such Executive Order".

6. Excepted from this are the five (5) CIA documents, B–51- 55, discussed *infra*.

sary process." *Phillippi, supra* citing *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973).

The Court certainly is not of the opinion that *in camera* inspection is required in every FOIA case. "This is clearly not what Congress intended, nor what this Court has found to be necessary." *Weissman v. CIA,* No. 76–1566, 565 F.2d 692 (D.C.Cir.1977, *as amended,* April 4, 1977). Nonetheless, it is necessary to determine the need for *in camera* inspection on a case by case basis. Plaintiffs have made a credible challenge to some of the defendants' claimed exemptions, and fairness dictates that the Court in this case determine *de novo* the applicability thereof, by means of *in camera* inspection of a few representative documents bearing in mind, of course, that the agency's affidavits will be accorded substantial weight where national security exemptions are claimed. 93d Cong., 2d Sess., Senate Report No. 93–1200, at 12 (The Conference Report).

Accordingly, the Court will inspect *in camera* the following documents: A–2, A–3, A–4, A–5, A–9, A–12, A–15, A–21, A–22, B–1, B–5, B–25, B–30, B–47 and C–4. The defendants shall submit these documents to the Court no later than five (5) days following the filing of this memorandum and accompanying order.

With respect to the five CIA documents [7] for which defendants claim Exemptions (b)(1), (3) and (6) [8], the Court is of the opinion that further justification, itemization and indexing are required. *Vaughn v. Rosen, supra.* For example, each claimed exemption should be cross-referenced to the applicable deleted portion of each document. Where the justification refers to "the names of other individuals in a context

in which their privacy would be affected", the agency should be able to provide more detailed information.

The Court will reserve final judgment with respect to the pending motions until it has had the opportunity to conduct *in camera* inspection of the documents requested and review the additional justification, itemization and indexing of the CIA documents.

### ON OPINION AFTER IN CAMERA INSPECTION

On June 22, 1977, this Court issued a Memorandum Opinion and Order setting forth the background of plaintiffs' action in which they seek to compel disclosure of certain documents under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (Supp. V 1975). In addition, the Court granted plaintiffs' motion for *in camera* inspection as to a representative sampling of the 68 documents for which defendants have claimed exemptions from disclosure.[1] The Court further ordered defendants to provide a more detailed justification, itemization and indexing with respect to five (5) documents originating with the CIA.[2] The Court reserved judgment on the cross-motions for summary judgment until it had conducted the *in camera* review. Defendants submitted the documents for *in camera* inspection on June 27, 1977, and the additional material with regard to the CIA documents on June 29, 1977. The Court has completed its review of the documents *in camera* and has examined the further justification, itemization and indexing. In so doing, it has sought to determine whether it appears that the documents fall within the claimed exemptions and, more particularly, whether there are any reasonably segrega-

---

7. Documents B–51 (part), B–52 (part), B–53, B–54 and B–55.

8. See note 5, *supra,* for the text of Exemption (b)(1). Exemption (b)(3) relates to matters "specifically exempted from disclosure by statute". Exemption (b)(6) involves ". . . files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

1. These included documents A–2, A–3, A–4, A–5, A–9, A–12, A–15, A–21, A–22, B–1, B–5, B–25, B–30, B–47 and C–4.

2. Documents B–51, B–52, B–53, B–54 and B–55.

ble portions of documents which can be released. The Court has not limited itself to "review of the quality of agency decision making" . . . but has decided "a claim of exemption de novo". *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, (D.C.Cir.1977). Accordingly, the Court makes the following conclusions as to the claimed exemptions:

### Exemption (b)(1)

This exemption relates to matters which are:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and. (B) are in fact properly classified pursuant to such Executive Order.

Defendants, through affidavits, have attested to the fact that those documents for which exemption one has been claimed have been properly classified and marked in accordance with Executive Order 11,652, 37 Fed.Reg. 5209 *et seq.* (1972). Additionally, said documents have been independently reviewed by the Department of Justice Review Committee and their continued classification upheld.

█ The basis for the classification for the most part is defendants' claim that disclosure of the documents involved would reveal intelligence sources and methods and the fact of FBI interest in a particular diplomatic establishment, especially that of a communist-bloc country. Plaintiffs, however, maintain that the latter has been officially confirmed by FBI Director Kelley in a public speech given February 9, 1977 and is therefore not properly covered by exemption one. Plaintiffs do not, however, seek disclosure of any specific intelligence source or method or of any individual target.

Defendants have also claimed exemption one where information was given to the FBI by friendly foreign intelligence agencies. Plaintiffs contend that while they do not seek the identity of the agencies, they are entitled to the content of the information if it can be disclosed without revealing the source.

The Court has reviewed nine (9) documents [3] for which exemption one has been claimed, either in whole or in part. It has also reviewed the justifications set forth in the various affidavits and summarized in Appendices A, B and C to defendants' motion for summary judgment, according them substantial weight as is proper where national security exemptions are involved. 93d Cong., 2d Sess., Senate Report No. 93–1200, at 12 (The Conference Report). Based thereon, the Court concludes that the documents were properly marked and classified as either "Secret" or "Confidential" under Executive Order 11,652, *supra,* both from a procedural and substantive standpoint.[4]

█ Where the exemption is claimed to prevent disclosure of an intelligence source or method, or interest in a particular diplomatic establishment, there is no additional segregable material which can be released without revealing that for which the exemption has been invoked; namely, the "identity, types or character of certain U.S. intelligence sources and methods, specific diplomatic targets of intelligence interest . . . and a designated time period wherein the target was of interest." Ryan Affidavit, at 2. Director Kelley's speech, which plaintiffs rely on, is general in nature and does not disclose a *specific* intelligence source or method, or a designated time peri-

**3.** These are: Documents A–2, A–4, A–9, A–12, A–15, A–21, A–22, B–5 and B–25. Of these documents, A–9 and A–22 were withheld because the information was provided by friendly intelligence agencies.

**4.** With respect to document A–4, only one sentence located on page two, paragraph one is withheld under exemption one. This claim is made belatedly, defendants having discovered the alleged oversight apparently for the first

time when preparing to submit the requested documents to the Court for *in camera* inspection. Although the document has not been marked "confidential" because the sentence deleted is identical to one found in document A–2, at page one, paragraph 3, and the Court finds that said exemption is properly invoked therein, it will also uphold the defendants' claim as to the single sentence in document A–4.

od. Neither the fact nor the substance of his speech supports plaintiffs' claim that additional material in the instant documents should be released.

■ Where exemption one is claimed for documents obtained in confidence from a friendly foreign source, the substance of the documents, as well as the source, is properly withheld and again, there are no segregable portions which can be released.

*Exemption (b)(3)*

Exemption three applies to matters that are:

Specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

This exemption was claimed only for the five (5) CIA documents, B–51, B–52, B–53, B–54 and B–55, pursuant to 50 U.S.C. §§ 403(d)(3) and 403g. With respect thereto, the Court required defendants to provide a more detailed justification, itemization and indexing, which they filed with the Court on June 30, 1977 in the form of a supplemental affidavit of Charles A. Briggs. In addition, they had released segregated versions of two (2) of the documents.

■ Based thereon, as well as on the December 29, 1976 Briggs affidavit, the Court concludes that the Agency's action can be sustained. Furthermore, it will not be necessary to inspect any of these documents *in camera. See National Airlines, Inc. v. CAB,* Civil No. 75–613 (D.D.C. Oct. 10, 1975); *Ray, et al v. Bush, et al,* Civil No. 76–0903 (D.D.C. Jan. 25, 1977). Unlike the other exemptions, the applicability of exemption three does not depend upon the factual content of specific documents. "[W]hen an agency asserts a right to withhold information based on a specific statute of the kind described in exemption three, the only question 'to be determined in a

district court's *de novo* inquiry is the factual existence of such a statute, regardless of how unwise, self-protective, or inadvertent the enactment might be.'" *Administrator, FAA v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) (Stewart, J., concurring, joined by Marshall, J.), *quoting EPA v. Mink,* 410 U.S. 73, 95n, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (Stewart, J., concurring); *National Airlines, Inc. v. CAB, supra.* This Circuit has previously held that 50 U.S.C. §§ 403(d)(3) and 403(g) are each statutes exempting disclosure within the meaning of exemption three. *Weissman v. CIA,* 565 F.2d 692 (D.C.Cir.1977).

*Exemption (b)(5)*

■ This exemption permits the withholding of inter-agency or intra-agency memoranda which would not be available by law to a party other than an agency in litigation with the agency. Documents which reflect advisory opinions, recommendations and internal deliberations leading to the formulation of governmental decisions and policy are clearly contemplated as falling within this exemption. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Mead Data Central, Inc. v. United States Department of the Air Force, supra.*

■ The exemption was claimed as a basis for withholding portions of documents B–47 and C–4 which the Court examined. As for the former, the entire document consists of analysis and opinion culminating in a recommended course of action with regard to the advisability of giving advance notice to members of the news media when their telephone records were subpoenaed. It does not purport to finally dispose of the matter at issue. *NLRB v. Sears, Roebuck & Co., supra.* There are no further portions of a factual or investigative nature which are reasonably segregable. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Document C–4 likewise consists of the author's opinions, personal characterization and policy recommendations to such an

extent that they are "inextricably intertwined" with the factual portions. *Vaughn v. Rosen (I),* 484 F.2d 820 (D.C.Cir.1973); *see also, Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63 (1974).

### *Exemptions (b)(6) and (b)(7)(C)*

 These exemptions permit, respectively, withholding of "personnel and medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ," and "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would constitute a clearly unwarranted invasion of personal privacy." Exemption six has been properly invoked for document C–4. The factual portion is not reasonably segregable and contains information which, if released, would place highly personal information about third parties contained in the files into the public domain without their consent. The balance between "the protection of an individual's private affairs from unnecessary public scrutiny and the preservation of the public's right to governmental information," *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), is necessarily weighted toward protection of the individual's personal privacy in this case. Similarly, the Court finds that exemption (b)(7)(C) is a proper basis for withholding portions of documents A–3, A–5 and B–47.[5] Again, the damage to privacy of an individual outweighs the public interest in disclosure.

### *Exemption (b)(7)(D)*

Exemption (b)(7)(D) protects any confidential information furnished only by a confidential source and contained in investigatory records compiled for law enforcement purposes. Defendants have withdrawn their (7)(D) claim as to documents A–15, B–5 and B–25 while continuing to rely on exemption one with respect thereto. Documents A–12 and A–21 are also properly withheld under exemption one alone and

the Court need not consider defendants' 7(D) claim as to them. Document A–3 contains only 7(D) exemptions in relation with 7(C). The Court finds that the 7(C) claim alone is sufficient to merit nondisclosure. Document B–30 is also properly withheld due to the source's specific request of an assurance of confidentiality and the fact that disclosure of the information would, in the Court's view, lead to identification of the source.

 With regard to the remaining documents, A–2, A–4, A–5 and B–1, the substantive information does not appear to the Court to be confidential in light of other information already disclosed to plaintiffs, nor would it of itself lead to identification of the source of the information. Consequently, the Court is ordering release of the segregable portions of these documents which do not specifically identify sources. By way of example, the Court orders the following portions released:

(1) Document A–2: On page one, paragraph two, the third, fourth and fifth sentences should be released. Delete therefrom the three words in the fifth line of the paragraph, the two words in the sixth line and the first portion of the fifth sentence down to the middle of the ninth line, all of which specifically identify a source. Also delete the last two lines of the paragraph as they involve the privacy of another individual. (Exemption 7(C)). On page three, the top three lines should be released. The first two full paragraphs containing further elaboration of the aforementioned paragraph on page one should be released with similar deletions.

(2) Document A–4: On page one, paragraph three should be released with the same deletions indicated for paragraph two on page one of document A–2 above.

(3) Document A–5: On page one, the portion of paragraph six, and on page two, paragraph one, the portion of the fourth and fifth lines currently being withheld should be released.

---

**5.** Plaintiffs have indicated they are not pursuing portions of documents A–2 and A–4 for

which exemption 7(C) has been claimed since they relate to plaintiff Dudman's brother.

(4) Document B–1: All portions for which 7(D) has been claimed should be released.

As for the other documents, if any, containing 7(D) claims which the Court has not inspected *in camera* and for which defendants have not also claimed exemption one, defendants are requested to review them again in light of the above ruling and to turn over comparable segregable portions. Even if the source is an "informant" and an assurance of confidentiality is given pursuant to standard FBI practice, the substance of the information provided will often not reveal the source's identity and will therefore be segregable.[6]

*Conclusion*

The Court concludes that the 15 documents which it carefully examined *in camera* were representative of the total[7] and that the defendants properly withheld the 68 documents, or portions thereof, pursuant to exemptions 1, 3, 5, 6, and 7(C). Accordingly, their motion for summary judgment is granted as to those exemptions. However, where exemption 7(D) is claimed, defendants will release the information specified above and review those remaining documents which contain 7(D) claims apart from exemption one claims and which the Court has not inspected *in camera*. Any similarly segregable material in those documents shall also be released to plaintiffs forthwith. Plaintiffs' cross-motion for summary judgment is therefore granted as to those 7(D) claims specified above, and this case is dismissed. An appropriate order is entered herewith.

**6.** The Court, by way of additional example, cites the information already released on page two of document A–3.

**7.** In addition, included therein were those documents which individually appeared to the Court to be most in dispute.

**1.** Defendants have asked that the following portions of document B–1 be deleted:
 1. The first and second words on line seven of paragraph one on page one and

ORDER

Defendants have filed a motion for relief from this Court's memorandum and order of September 23, 1977 pursuant to Rule 60(b)(6), Fed.R.Civ.P. They allege that release of certain portions of document B–1[1] will enable plaintiffs, upon a reading of the entire document, to identify the source of the information. Defendants have claimed that this information is exempt pursuant to 5 U.S.C. § 552(b)(7)(D).[2]

The Court agrees that this exemption may be invoked to protect both the identity of the source as well as to deny release of information which might reasonably lead to disclosure of the source's identity. The Court cannot dispute defendants' representation that the source supplied information under an expressed assurance of confidentiality from the FBI and that release of the aforementioned portions of document B–1 might identify the source or lead to his/her identification.

Accordingly, it is by the Court this 7th day of December 1977,

ORDERED that defendants' motion for relief from memorandum and order should be, and the same hereby is granted; and it is further

ORDERED that document B–1 shall be released and deleted therefrom shall be the first and second words on line seven of paragraph one on page one; and the second, third, fourth and fifth words on the first line of paragraph two on page one.

2. The second, third, fourth and fifth words on the first line of paragraph two on page one.

**2.** 5 U.S.C. § 552(b)(7)(D) exempts from disclosure:
 investigatory records compiled for law enforcement purposes which would disclose the identity of a confidential source and in the case of a record compiled by a criminal law enforcement authority in the course of criminal investigation . . . confidential information furnished only by the confidential source.