Robert G. VAUGHN, Appellant,

v.

Bernard ROSEN, Executive Director, United States Civil Service Commission, et al.

No. 73–1039.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 7, 1973.

Decided Aug. 20, 1973.

Rehearing Denied Oct. 18, 1973.

Ronald L. Plesser, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief, for appellant.

John C. Lenahan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Derek I. Meier, Asst. U. S. Attys., were on the brief, for appellees.

Before ROBINSON and WILKEY, Circuit Judges, and FRANK A. KAUFMAN,* District Judge for the District of Maryland.

* Sitting by designation pursuant to 28 U.S.C. § 292(c).

WILKEY, Circuit Judge:

Appellant sought disclosure under the Freedom of Information Act [1] of various government documents, purportedly evaluations of certain agencies' personnel management programs. The District

1. "5 U.S.C. § 552. *Public information; agency rules, opinions, orders, records, and proceedings*

"(a) Each agency shall make available to the public information as follows:

"(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

"(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

"(B) statements of the general course and methods by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

"(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

"(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

"(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

"(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

"(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

"(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

"(C) administrative staff manuals and instructions to staff that affect a member of the public;

unless the materials are promptly published and copies offered for sale. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction. However, in each case the justification for the deletion shall be explained fully in writing. Each agency also shall maintain and make available for public inspection and copying a current index providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—

"(i) it has been indexed and either made available or published as provided by this paragraph; or

"(ii) the party has actual and timely notice of the terms thereof.

"(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member. Except as to causes the court considers of greater importance, proceedings before the district court, as authorized by this paragraph, take precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way.

"(4) Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

Court denied disclosure, presumably on the ground the documents fell within one or more exemptions to the FOIA.[2] The scant record makes it impossible to determine if the information sought by appellant is indeed exempt from disclosure; we must remand the case to the trial court for further proceedings.

## I. *Facts*

Overall responsibility to evaluate, oversee, and regulate the personnel management activities of the various federal agencies rests with the Civil Service Commission.[3] The Bureau of Personnel Management, the arm of the Civil Service Commission for this task, works with the agencies in evaluating their personnel management programs. After each evaluation is complete, the Bureau issues a report entitled Evaluation of Personnel Management. These evaluations assess the personnel policies of a particular agency and set forth recommendations and policies customarily adopted by both agencies and Commission.[4] Appellant, a law professor doing research into the Civil Service Commission, sought disclosure of these evaluations and certain other special reports of the Bureau of Personnel Management.[5]

The Director of the Bureau of Personnel Management Evaluation declined to release the documents sought.[6] This refusal to disclose was sustained by the Executive Director of the Civil Service Commission, who asserted that the information was exempt from disclosure because it (1) related solely to the internal rules and practices of an agency;[7] (2) constituted inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with

"(b) This section does not apply to matters that are—

"(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;

"(2) related solely to the internal personnel rules and practices of an agency;

"(3) specifically exempted from disclosure by statute;

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

"(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

"(9) geological and geophysical information and data, including maps, concerning wells.

"(c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress."

2. The trial court below granted appellee's motion for summary judgment without giving any reasons for its action. We do not, therefore, know why the District Court found the documents to be exempt from disclosure.

3. *See* Exec.Order 9830 (24 Feb. 1947).

4. The documents under discussion are not a part of the record on appeal; the court does not, therefore, know precisely what is contained in the evaluations. Both parties, however, seem to agree that the general nature of the documents is as we have described them in the text. We may, therefore, accept this description for purposes of our discussion.

5. The documents other than the evaluations were described as "special studies of the Commission for fiscal years 1969–72." The exact nature of these "special studies" does not appear from the record, but it appears that they deal with the same general issues as do the evaluations.

6. Letter of Gilbert A. Schulkind (15 June 1972) (Joint App. at 15).

7. The FOIA provides that
this section does not apply to matters that are

. . . .

related solely to the internal personnel rules and practices of an agency

. . . .

5 U.S.C. § 552(b)(2) (1970).

the agency;[8] and (3) was composed of personal and medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.[9]

After this refusal appellant filed this action in the District Court, seeking injunctive relief and an order requiring disclosure of the requested materials in accordance with 5 U.S.C. § 552(a)(3) (1970). The Government filed a motion to dismiss, or in the alternative for summary judgment, in which it was contended that the reports fell within the three exemptions given above.

Aside from legal arguments, the sole support, regarding the contents of the documents and their exemption, of the Government's motion was an affidavit of the Director of the Bureau of Personnel Management Evaluation. This affidavit did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms the Director's opinion that the evaluations were not subject to disclosure under the FOIA. On the basis of this affidavit, the trial court granted the Government's motion for summary judgment. This appeal followed.

II. *Problems of Procedure and Proof under the Freedom of Information Act*

■ The Freedom of Information Act was conceived in an effort to permit access by the citizenry to most forms of government records. In essence, the Act provides that all documents are available to the public unless specifically exempted by the Act itself.[10] This court has repeatedly stated that these exemptions from disclosure must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act.[11] By like token and specific provision of the Act, when the Government declines to disclose a document the burden is upon the agency to prove *de novo* in trial court that the information sought fits under one of the exemptions to the FOIA.[12] Thus the statute and the judicial interpretations recognize and place great emphasis upon the importance of disclosure.

In light of this overwhelming emphasis upon disclosure, it is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. Obviously the party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure. In many, if not most, disputes under the FOIA, resolution centers around the factual nature, the statutory category, of the information sought.

In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing informa-

---

8. The FOIA provides that
   This section does not apply to matters that are

   .    .    .    .    .

   inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
   5 U.S.C. § 552(b)(5) (1970).

9. The FOIA provides that
   This section does not apply to matters that are

   .    .    .    .    .

   personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
   5 U.S.C. § 552(b)(6) (1970).

10. *See* footnote 1, *supra.*

11. "The Legislative plan creates a liberal disclosure requirement limited only by specific exemptions, which are to be narrowly construed." Getman v. N. L. R. B., 146 U. S.App.D.C. 209, 211, 450 F.2d 670, 672, stay denied, 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed. 2d 8 (1971). *See also* Bristol-Myers v. F. T. C., 138 U.S.App.D.C. 22, 25, 424 F.2d 935, 938, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970) ; M. A. Shapiro & Co. v. S. E. C., 339 F.Supp. 467, 469 (D.D. C.1972).

12. *See* 5 U.S.C. § 552(a)(3) (1970).

tion, and this case provides a classic example of such a situation. Here the Government contends that the documents contain information of a personal nature the disclosure of which would constitute an invasion of certain individuals' privacy. This factual characterization may or may not be accurate. It is clear, however, that appellant cannot state that, as a matter of his knowledge, this characterization is untrue. Neither can he determine if the personal items, assuming they exist, are so inextricably bound up in the bulk of the documents that they cannot be separated out. The best appellant can do is to argue that the exception is very narrow and plead that the general nature of the documents sought make it unlikely that they contain such personal information.

E.P.A. v. Mink [13] differentiates between the action by the trial court called for when the factual nature of the disputed information is known and when it is not known. The first portion of the Supreme Court's decision dealt with documents the factual nature of which was not disputed; all parties agreed that the documents had been classified as "secret" by the President. The first exemption under the FOIA provides that documents which are "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy," are exempt from disclosure.[14] Since the factual nature of the documents was undisputed and since under this undisputed description of the documents they clearly fit within the exemption, the Court held that no further inquiry or argument was permitted; they need not be revealed.

A second group of documents considered by the Court in *Mink* had not been classified "secret." They were claimed to be exempt as "inter-agency or intra-

agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." [15] There was, however, a *factual* dispute regarding whether the documents actually fit this description. The Court concluded that, while material dealing with facts contained in such memoranda could be disclosed, memoranda dealing with law or policy were exempt. There was a still further *factual* dispute regarding how much of the material was factual, how much law or policy, and how much a combination of the two. With regard to this material which did not fit squarely within the language of the exemption, the Court remanded to the trial court to make a determination regarding the actual composition of the material.

The disputed information in this case is analogous to the second group of documents considered in *Mink*, in that on the record facts they do not indisputably fit within one of the exemptions to the FOIA. If the factual nature of the documents were so clearly established on the record, then the court would inquire no further and would make the legal ruling as to whether they fit within the defined exemption or exemptions. In this situation, in which there is a dispute regarding the nature of the information, the Supreme Court in *Mink* provided the outline of how trial courts should approach the job of making this factual determination.[16] Our discussion here is intended to be an elaboration of this outline.

This lack of knowledge by the party seeing disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily, the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under

13. 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

14. 5 U.S.C. § 552(b)(1) (1970).

15. 5 U.S.C. § 552(b)(5) (1970).

16. In E. P. A. v. Mink, 410 U.S. 73, 92–93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the

Supreme Court provided guidance for the trial court regarding when it should conduct an *in camera* examination. The Court made it clear that it was not always necessary for a court to conduct an *in camera* examination.

the FOIA this is not true, as we have noted, and hence the typical process of dispute resolution is impossible. In an effort to compensate, the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt. Such an examination, however, may be very burdensome, and is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure. In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization, particularly where the information is not extensive. But where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case.

The problem is compounded at the appellate level. In reviewing a determination of exemption, an appellate court must consider the appropriateness of a trial court's characterization of the factual nature of the information. Frequently trial courts' holdings in FOIA cases are stated in very conclusory terms, saying simply that the information falls under one or another of the exemptions to the Act. An appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; it must conduct its own investigation into the document. The scope of inquiry will not have been focused by the adverse parties and, if justice is to be done, the examination must be relatively comprehensive. Obviously an appellate court is even less suited to making this inquiry than is a trial court.

Here we are told that certain documents fall under three exemptions which permit the agencies to decline disclosure.[17] We do not know precisely how voluminous this information is, but from the general descriptions provided it seems reasonable to conclude that the documents run to many hundreds of pages. We could test the accuracy of the trial court's characterizations by committing sufficient resources to the project, but the cost in terms of judicial manpower would be immense.

■ This burden is compounded by the fact that an entire document is not exempt merely because an isolated portion need not be disclosed.[18] Thus the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information.[19] It is quite possible that part of a document should be kept secret while part should be disclosed. When the Government makes a general allegation of exemption, the court may not know if the allegation applies to all or only a part of the information. Isolating what exemptions apply to what parts of a document makes the burden of evaluating allegations of exemption even more difficult.

Such an investment of judicial energy might be justified to determine some issues. In this area of the law, however, we do not believe it is justified or even permissible. The burden has been placed specifically by statute on the Government. Yet under existing procedures, the Government claims all it need do to fulfill its burden is to aver that the factual nature of the information is

---

17. *See* footnotes 7–9, *supra*.

18. This was made clear in E. P. A. v. Mink, 410 U.S. 73, 85–94, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). *See also* Sterling Drug v. F. T. C., 146 U.S.App.D.C. 237, 243, 450 F.2d 698, 704 (1971).

19. It may be, of course, that the exempt and the non-exempt portions are so inextricably intertwined that it is impossible to separate them. The issue of whether they are intertwined is, itself, a matter of fact which must be determined by the trial court as the trier of fact. *See* E. P. A. v. Mink, 410 U. S. 73, 92, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

such that it falls under one of the exemptions. At this point the opposing party is comparatively helpless to controvert this characterization. If justice is to be done and the Government's characterization adequately tested, the burden now falls on the court system to make its own investigation. This is clearly not what Congress had in mind.

In two definite ways the present method of resolving FOIA disputes actually *encourages* the Government to contend that large masses of information are exempt, when in fact part of the information should be disclosed.

*First*, there are no inherent incentives that would affirmatively spur government agencies to disclose information. Under current procedures government agencies *lose* very little by refusing to disclose documents. At most they will be put to a court test stacked in their favor, the burden of which can be easily shifted to another by simply averring that the information falls under one of several unfortunately imprecise exemptions. Conversely, there is little to be *gained* by making the disclosure. Indeed, from a bureaucratic standpoint, a general policy of revelation could cause positive harm, since it could bring to light information detrimental to the agency and set a precedent for future demands for disclosure.

*Secondly*, since the burden of determining the justifiability of a government claim of exemption currently falls on the court system there is an innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information. Let the court decide! And the tactical ploy is, to the extent that the number of facts in dispute are increased, the efficiency of the court system involved in that dispute resolution will be decreased. If the mo-

rass of material is so great that court review becomes impossible, there is a possibility that an agency could simply point to selected, clearly exempt portions, ignore disclosable sections, and persuade the court that the entire mass is exempt. Thus, as a tactical matter, it is conceivable that an agency could gain an advantage by claiming overbroad exemptions.

The simple fact is that existing customary procedures foster inefficiency and create a situation in which the Government need only carry its burden of proof against a party that is effectively helpless and a court system that is never designed to act in an adversary capacity. It is vital that some process be formulated that will (1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information. To possible ways of achieving this goal we now turn our attention.

III. *Procedures for Testing the Classification of Claims to Exemptions.*

A. *Detailed Justification*

■ The problem of assuring that allegations of exempt status are adequately justified is the most obvious and the most easily remedied flaw in current procedures. It may be corrected by assuring government agencies that courts will simply no longer accept conclusory and generalized allegations of exemptions,[20] such as the trial court was treated to in this case, but will require a relatively detailed analysis in manageable segments. An analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be

20. This requirement is clearly mandated by the Supreme Court's language in *Mink*:

An agency should be given the opportunity, by means of *detailed affidavits or oral testimony*, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material . . . [subject to disclosure]. E. P. A. v. Mink, 410 U.S. 73, 93, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973) (emphasis added).

composed without excessive reference to the actual language of the document.[21]

### B. *Specificity, Separation, and Indexing*

The need for adequate specificity is closely related to assuring a proper justification by the governmental agency. In a large document it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt. This could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document.[22]

Such an indexing system would subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification. Opposing counsel should consult with a view toward eliminating from consideration those portions that are not controverted and narrowing the scope of the court's inquiry. After the issues are focused, the District Judge may examine and rule on each element of the itemized list. When appealed, such an itemized ruling should be much more easily reviewed than would be the case if the government agency were permitted to make a generalized argument in favor of exemption.

The need for an itemized explanation by the Government is dramatically illustrated by this case. The Government claims that the documents, as a whole, are exempt under three distinct exemptions. From the record, we do not and cannot know whether a particular portion is, for example, allegedly exempt because it constitutes an unwarranted invasion of a person's privacy or because it is related solely to the internal rules and practices of an agency. While it is not impossible, it seems highly unlikely that a particular element of the information sought would be exempt under both exemptions. Even if isolated portions of the document are exempt under more than one exemption, it is preposterous to contend that all of the information is equally exempt under all of

---

21. In E. P. A. v. Mink, *ibid.*, the Supreme Court made the following relevant comment:
    [T]he Agency may demonstrate, by surrounding circumstances, that particular documents are purely advisory and contain no separable, factual information. A representative document of those sought may be selected for *in camera* inspection. And, of course, the agency may itself disclose the factual portions of the contested documents and attempt to show, again by circumstances, that the excised portions constitute the bare bones of protected matter.
    In employing these techniques approved by the Court the agency should be careful that it does not discuss only the representative example while ignoring the bulk of the documents which may be disclosable. Such a course of action is not permissible under the Court's language in *Mink* and would lead to the undesirable result of sweeping disclosable material under a blanket allegation of exemption.

22. In our opinion in Sterling Drug, Inc. v. F. T. C., 146 U.S.App.D.C. 237, 450 F.2d 698 (1971), we remanded a FOIA case to the trial court because it was impossible to determine from the record if the trial court had considered whether all of the disputed information was exempt or whether part was exempt and part not. There we said:
    We must agree, however, that there is no indication in the opinion below that the judge considered the possibility of deleting portions of the documents. It may well be that making deletions would not change the character of these documents, since they appear to consist primarily of the thoughts and recommendations of the Commission and its staff. However, there may be appendices or statements of facts which are clearly subject to disclosure. See Soucie v. David, 145 U.S.App. D.C. 144 at 155, 448 F.2d 1067 at 1078 (1971). We must therefore remand the case so that the District Court judge can consider this possibility and state in his opinion that he has done so.
    146 U.S.App.D.C. at 243, 450 F.2d at 704. This case is similar in that we have no way of determining the scope of the trial court's determination of exemption. From all that appears on the record, the trial judge's determination was that he found all information exempt under all three of the alleged exemptions. This inability to determine which exemptions apply to what portions of the information gives rise to the need for an adequate indexing system such as described above.

the alleged exemptions. It seems probable that some portions may fit under one exemption, while other segments fall under another, while still other segments are not exempt at all and should be disclosed. The itemization and indexing that we herein require should reflect this.

### C. *Adequate Adversary Testing*

Given more adequate, or rather less conclusory, justification in the Government's legal claims, and more specificity by separating and indexing the assertedly exempt documents themselves, a more adequate adversary testing will be produced. Respect for the enormous document-generating capacity of government agencies compels us to recognize that the raw material of an FOIA lawsuit may still be extremely burdensome to a trial court. In such cases, it is within the discretion of a trial court to designate a special master to examine documents and evaluate an agency's contention of exemption. This special master would not act as an advocate; he would, however, assist the adversary process by assuming much of the burden of examining and evaluating voluminous documents that currently falls on the trial judge.

### IV. *Conclusion*

Upon remand the Government should undertake to justify in much less conclusory terms its assertion of exemption and to index the information in a manner consistent with Part III above. The trial judge may, if he deems it appropriate, appoint a special master to undertake an evaluation of the information.

The procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate. Our decision here may sharply stimulate what must be, in the final analysis, the simplest and most effective solution—for agencies voluntarily to disclose as much information as possible and to create internal procedures that will assure that disclosable information can be easily separated from that which is exempt. A sincere policy of maximum disclosure would truncate many of the disputes that are considered by this court. And if the remaining burden is mostly thrust on the Government, administrative ingenuity will be devoted to lightening the load.[23]

For the reasons given, the case is remanded for further proceedings consistent with this opinion.

So ordered.

23. In this regard, administrative agencies should consider the example set by government investigative agencies following the passage of the Jencks Act. 18 U.S.C. § 3500 (1970). Confronted with a Congressional mandate to disclose information relevant to the testimony of witnesses in criminal trials, investigative agencies adopted procedures that assured proper disclosure. Investigative reports were prepared in a form in which the portions to which defense counsel should have access were easily removed from the file and made available to the defense counsel. Other parts of the file were kept segregated and relatively few problems were encountered.