Bill B. MOOREFIELD,
Plaintiff-Appellant,

v.

UNITED STATES SECRET SERVICE et al., Defendants-Appellees.

No. 78–1443.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1980.

John R. Lowery, Kutak, Rock & Huie, Atlanta, Ga., for plaintiff-appellant.

William L. Harper, U. S. Atty., Robert J. Castellani, Asst. U. S. Atty., Atlanta, Ga., for defendants-appellees.

Before COLEMAN, Chief Judge, and BROWN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Bill B. Moorefield, twice convicted for threatening the life of the President of the United States, brought this Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), suit to gain access to the file maintained on him by the United States Secret Service (Service). The district court ruled that the entire Moorefield file was exempt from disclosure because of one or more of the FOIA exceptions provided in 5 U.S.C. § 552(b). We affirm.

Moorefield initially asked to see his Secret Service file, but the Service refused his request, citing seven FOIA exemptions [1]

1. These exemptions appear in 5 U.S.C. § 552(b)(2), (5), (7)(A, C–F) (1976):

(b) This section does not apply to matters that are—

. . . . .

(2) related solely to the internal personnel rules and practices of an agency;

. . . . .

(5) inter-agency or intra-agency memorandums or letters which would not be availa-

that it said made disclosure unnecessary. Moorefield then instituted this suit to gain access to the documents. The Service moved for summary judgment, relying on an affidavit of its Deputy Director in which he elaborated on the reasons for the Service's opposition to disclosure of any of the Moorefield file. After examining Moorefield's file *in camera,* the district judge granted summary judgment for the Service.

■ On appeal, Moorefield argues that exemption 7(A), 5 U.S.C. § 552(b)(7)(A), is inapplicable in this case, and that, while parts of his record may be withheld under some of the other cited exemptions, further proceedings are necessary before that determination may be made. As Moorefield correctly observes, in FOIA suits there is a presumption of disclosure that the Government has the burden of rebutting, and unless requested material falls into one of the specific statutory exemptions, it must be made available on demand to any member of the general public.[2] *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 220, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978). When only portions of a record are exempt, they should be deleted and the remainder of the document disclosed. 5 U.S.C. § 552(b).

■ As a general proposition, an agency opposing disclosure must address its objections to specific documents or specific parts of documents. *See, e. g., Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). In this case, however, the Service made a blanket objection to disclosure, claiming that every item in the Moorefield file was subject to at least one of seven section 552(b) exemptions. The Service did not indicate, as to any of the items, which exemptions applied. In its order granting summary judgment the district court similarly failed to indicate how the exemptions applied; it merely held:

> The court has had an opportunity to examine the documents requested and finds that the defendant has properly claimed the exemptions listed. The documents in question are sensitive documents, the disclosure of which would constitute a threat to ongoing enforcement activities and to certain individuals within [and] without the Secret Service.

Record at 178. Ordinarily, such a holding would be insufficient, and we would remand for further proceedings. On remand, the Service would have the obligation of establishing, with the specificity necessary to permit proper appellate review, how a given exemption foreclosed complete or partial disclosure of each document in the Moorefield file. Without such a showing, our review would be limited to an unguided rereading of the disputed documents; in short, we would need to speculate whether they were exempt from disclosure. When exemption 7(A) is invoked, however, it is possible for us to assess the propriety of nondisclosure without a trial court's finding on each document claimed to be exempt.

---

ble by law to a party other than an agency in litigation with the agency;

. . . . . .

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would have (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

2. Moorefield has the same rights under the FOIA as any other person who might seek access to his record. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Thus, his two convictions for threatening the President do not affect his right to see the file; Moorefield may see the documents if *anyone* is allowed to do so by the FOIA. *See Cox v. United States Department of Justice,* 576 F.2d 1302, 1305 n. 5 (8th Cir. 1978).

Exemption 7(A) prohibits disclosure of "investigatory records compiled for law enforcement purposes, . . . to the extent that the production of such records would . . . interfere with enforcement proceedings." This language is contained in the 1974 amendments to the FOIA and was extensively discussed by the Supreme Court in *NLRB v. Robbins Tire & Rubber Co., supra*. *Robbins Tire* held exemption 7(A) applicable to prehearing disclosure in a National Labor Relations Board (NLRB) enforcement proceeding and forbade the disclosure of an entire investigatory file. 437 U.S. at 234, 236, 98 S.Ct. at 2323–24. *See* Note, *Developments Under the Freedom of Information Act—1978*, 1979 Duke L.J. 327, 339–43. At least three members of the Supreme Court believed that a per se exemption should apply in all exemption 7(A) cases, *see Robbins Tire*, 437 U.S. at 242, 98 S.Ct. at 2327 (Stevens, J., concurring); Note, *supra*, at 342, 346 n. 150, and the majority opinion allows for generic determinations of likely interference in the proper case. *Robbins Tire*, 437 U.S. at 234–236, 98 S.Ct. at 2323–24. The reasons for nondisclosure, as well as the potential harm which might result from disclosure, are at least as compelling in this case as those in the NLRB context of *Robbins Tire*. Accordingly, we conclude that if exemption 7(A) applies to the Moorefield file, that exemption, standing alone, is sufficient to sustain the summary judgment for the Secret Service.

■ The documents in the Moorefield file are plainly "investigatory records" prepared for "law enforcement purposes." *See* 2 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 10.08[3], at 10–199 (1979). They include background and other matters specifically relevant to Moorefield, and were prepared to help the Service fulfill its duty under 18 U.S.C. § 3056 (1976)—ensuring the lives and safety of the President, members of his family, and certain other persons.[3] Hence, our only question is whether their

production would "interfere" with "enforcement proceedings," as those terms are employed in exemption 7(A).

■ "Enforcement proceedings" are defined in neither section 7(A) nor its legislative history, *see, e. g.*, J. O'Reilly, *Federal Information Disclosure* § 17.07, at 17–20.1, n. 1 (1978), and we have found no definitive case law interpretation of it. While there are expressions which indicate that such "proceedings" might exist only if an adjudicatory process is pending, *see, e. g., Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1184 & n. 9 (5th Cir. 1978), we do not view them as dispositive. Moorefield argues that no enforcement proceeding exists here because he is not suspected of criminal activity within the Service's jurisdiction. Instead, he is of interest to the Service because his prior history of making threats against the President makes him an ongoing danger to a protectee of the Service. Records of such an investigation could never meet the 7(A) exemption, in Moorefield's view, because he equates "enforcement proceedings" with "judicial proceedings." Since no judicial proceeding is contemplated at this stage of his investigation, he argues, there is no enforcement proceeding to be interfered with. We do not agree.

Most law enforcement investigations commence because someone believes that the law has been violated. The purpose of the investigation is to gather the information necessary to enforce the law through a judicial proceeding, such as a criminal prosecution, or an administrative hearing. Since this is the goal of the investigation, it seems reasonable to equate "enforcement proceeding" with an adjudicatory procedure. As *Robbins Tire* discloses, exemption 7(A) was enacted in 1974 mainly to overrule judicial decisions that prohibited disclosure of investigatory files in "closed" cases. 437 U.S. at 226, 98 S.Ct. at 2319–23. Under exemption 7(A), courts were to cease automatically excluding from disclosure any-

---

3. The Service is given other duties by 18 U.S.C. § 3056 (1976), such as the apprehension of counterfeiters, that fit the pattern of normal law enforcement functions performed by agencies such as the FBI. Our present holding deals only with Service investigations motivated by the prophylactic purpose of keeping Service protectees from harm.

thing that was characterized as an "investigatory file" and to consider the reasons for nondisclosure before ordering it. *Id.* at 229–233, 98 S.Ct. at 2320–22. The 1974 enactment was "to indicate that 'with passage of time, . . . when the investigation is all over and the purpose and point of it has expired, it would no longer be an interference with enforcement proceedings and there ought to be . . . disclosure.'" *Id.* at 232, 98 S.Ct. at 2322 (quoting 2 *Hearings on S. 1142 et al. before the Subcomms. on Administrative Practice & Procedure and Separation of Powers of the Senate Judiciary Comm. and the Subcomm. on Intergovernmental Relations of the Senate Comm. on Government Operations,* 93d Cong., 1st Sess. 158 (1973)). Usually the "purpose and point" of an investigation expire when its goal, the holding of an adjudicatory proceeding, is reached. Hence, an enforcement proceeding can generally be equated with a trial. In our view, Moorefield's case is an exception to this rule.

In discharging its responsibility to protect the President, the Secret Service does not conduct its routine investigations with a view towards apprehending law-breakers and bringing them to justice. Thus, if the Service has succeeded in its prophylactic mission, it should never appear in an adjudicatory proceeding to prosecute the assailant of a President, or any of its other protectees. Its job is to *prevent* an attack from ever being made. In the views of Senator Hart, who introduced the 1974 exemption amendment (including section 7(A)), "enforcement proceedings" correspond with "law enforcement purposes," and such purposes include the prevention as well as the detection and punishment of violations of the law. *1974 Attorney General's Memorandum on the Freedom of Information Amendments* at 6–7 (1975) (*1974 Attorney General's Memorandum*). Notwithstanding that Service investigations are not directed toward trials or hearings, they are certainly directed toward an active and concrete effort to enforce the law—in fact, nothing could be more "active and concrete" than

activities that are part of the security apparatus that surrounds the President of the United States.

As the Deputy Director of the Service stated in his affidavit in this case,

Bill B. Moorefield is of active interest to the United States Secret Service. His file is considered by the Secret Service to be an active case. The direction of interest shown by Mr. Moorefield toward Secret Service protectees has required that in-depth investigations be conducted by the Secret Service including interviews with Mr. Moorefield. Mr. Moorefield has pled guilty on two separate occasions, June 19, 1974 and November 23, 1975, to violations of title 18, United States Code, section 871, for threats to the President of the United States and is presently serving a prison term. The Secret Service continues to determine Bill Moorefield's location during the visit of protectees to his immediate area. These and future investigations would be seriously hampered by the disclosure to Mr. Moorefield of information from the files of the Secret Service pertaining to him. Mr. Moorefield would not only learn what criteria the Secret Service uses in conducting a protective investigation, he would be able to avoid in the future certain aspects of investigations pertaining to him if he were to become aware of the various efforts made by the Secret Service to investigate him. Disclosure of information to those individuals which are being actively investigated would allow that information to be utilized to hamper and avoid further investigations.

Record at 65. Obviously, the "purpose and point" of the Service's investigation has not expired. Now that Moorefield has served his term and is at liberty,[4] he presents more of a threat than he did while a federal prisoner.

The Court in *Robbins Tire* found that when Congress enacted the 1974 amendments, it did not wish to alter or undercut the existing FOIA exemptions, 437 U.S. at 233–234, 98 S.Ct. at 2322–23. Congress

---

4. Moorefield was released from custody prior to the oral argument in this appeal.

clearly intended Service records such as the Moorefield file to be exempt under the original FOIA. *Freedom of Information Act Source Book,* Sen.Doc. 93–82, Subcomm. on Administrative Practice & Procedure, Senate Judiciary Comm., 93d Cong., 2d Sess. 107 (1974); *see id.* at 82, 93. Congress could not have wanted to open Service files to the public, which includes potential assassins, merely because they contain protective rather than prosecutorial investigative materials. "[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against." 437 U.S. at 232, 98 S.Ct. at 2322. In light of our reading of *Robbins Tire* and the legislative history of exemption 7(A), we conclude that the Service's activities in investigating and observing persons who present threats to Service protectees are enforcement proceedings for the purposes of the FOIA.

 The remaining question is whether an FOIA disclosure of the Moorefield file would "interfere" with an enforcement proceeding. We conclude that it would. The materials in this file are sensitive; all constitute investigative matter that assists the Service in its efforts to keep track of Moorefield and preclude his harming a Service protectee. As the Service affidavit pointed out, disclosure of these materials could tend generally to inform targets of Service investigations of the means the Service employs to keep abreast of them, and, specifically, to enable Moorefield to elude the scrutiny of the Service, with potentially disastrous results. In our view, disclosure here would constitute an interference much like the one found by the Court in *Robbins Tire,* where it concluded that, on balance, disclosure of the NLRB witness statements would upset the conduct of enforcement proceedings. 437 U.S. at 236–242, 98 S.Ct. at 2324–27. The risk of presidential assassination presented by the forced disclosure of the sort of Service records involved here is at least as great as that of the mere witness intimidation considered in *Robbins Tire. See id.* at 239–241, 98 S.Ct. at 2325–26; *1974 Attorney General's Memorandum* at 8.

In summary, we hold here that the records of ongoing, active Secret Service investigations, carried out pursuant to the Service's protective function, may be exempted from FOIA disclosure under section 7(A) without the individualized scrutiny normally given purportedly exempt documents; that such investigations are enforcement proceedings; and that disclosure of the type of records contained in such an investigative file would interfere with such proceedings. Accordingly, the judgment of the district court is AFFIRMED.