**Harold J. JENKS, Plaintiff,**

v.

**UNITED STATES SECRET SERVICE, Defendant.**

**No. C–3–81–173.**

United States District Court, S. D. Ohio, W. D.

June 12, 1981.

308

Jeffrey E. Froelich, Dayton, Ohio, for plaintiff.

Robert J. Fogarty, Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING CROSS MOTIONS FOR SUMMARY JUDGMENT; CERTAIN PROCEDURES ORDERED OF GOVERNMENT

RICE, District Judge.

This action was commenced under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), by Harold J. Jenks

against the United States Secret Service. On approximately December 4, 1980, plaintiff, who is presently awaiting trial in this Court on a five count indictment for alleged illegal counterfeiting activities, made his initial request for information from defendant, seeking all records and files concerning himself and John H. Puckett. Puckett, who is not a party to this action, is expected to appear as a government witness at plaintiff's criminal trial, and is in the government's Witness Protection Program.

On December 31, 1980, plaintiff was informed by an FOIA officer that his records were exempt from disclosure and were, therefore, being withheld. The records concerning Puckett were not specifically mentioned in this correspondence. On January 7, 1981, plaintiff administratively appealed the denial, and again sought all information in defendant's records and files concerning both himself and Puckett. The present suit was commenced on January 29, 1981, at which time no determination had been rendered on plaintiff's appeal.

In a letter dated February 23, 1981, plaintiff 'was informed by Myron I. Weinstein, Deputy Director of the Secret Service, that a timely determination of plaintiff's appeal was not possible, due to a voluminous backlog. However, Deputy Director Weinstein did inform plaintiff that he had reviewed the relevant documents, and was satisfied that they had been properly withheld.

This matter is now before the Court on the parties' cross motions for summary judgment on the issue of whether defendant has properly withheld the information sought by plaintiff. For the reasons set forth below, the Court concludes that neither motion is well taken, and both are, therefore, overruled.

## A. *DISCUSSION*

The role of the court in resolving an FOIA request dispute is set forth in 5 U.S.C. § 552(a)(4)(B) (1976). This section requires the court to "make a *de novo* determination of whether records were properly withheld under any of the FOIA exemption provisions." *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980). *See also,*

*Kanter v. IRS*, 433 F.Supp. 812 (N.D.Ill. 1977); *Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978). "[T]he agency which seeks to deny disclosure has the burden 'to prove . . . that the information sought fits under one of the exemptions.'" *Kanter v. IRS*, 433 F.Supp. 812, 816 (N.D.Ill.1977), *quoting, Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

█ Because "disclosure, not secrecy, is the dominant objective of the Act," *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), the exemptions are to be narrowly construed. *Id.* Blanket exemptions are not favored by the courts. *New England Medical Center Hospital v. NLRB*, 548 F.2d 377, 386 (1st Cir. 1976); *see also, Department of Air Force v. Rose, supra*, 425 U.S. at 371–72, 96 S.Ct. at 1603–04. "As a general proposition, an agency opposing disclosure must address its objections to specific documents or specific parts of documents." *Moorefield v. United States Secret Service*, 611 F.2d 1021, 1023 (5th Cir. 1980).

In the case at bar, defendant has not addressed its objections to any specific documents or portions thereof. It has not apprised the Court of the number of documents involved, nor has it attempted to itemize, index, or otherwise identify the contents of the records and files, except in very general and conclusory terms. Defendant has submitted the affidavit of Myron Weinstein, Deputy Director of the Secret Service, which contains a lengthy discussion of his basis for invoking various FOIA exemptions with respect to documents which are physically located in Washington, D. C., but which does not contain a concrete description of the contents of the records. Defendant has also submitted the affidavit of Special Agent Kelley J. Stanard, which gives the following general description of the files located in Dayton, Ohio:

These documents consist of investigative reports, lab reports, inter and intra agency memoranda, grand jury exhibits, the identity of persons interviewed pursuant

to this criminal investigation, the identity and personal data concerning third parties mentioned as suspects of a criminal investigation, the identity of federal law enforcement officers, and public records. Affidavit of Stanard, para. 3. This affidavit does not indicate the volume of the files involved nor does it indicate, even in approximate terms, how many documents fall into the various broad categories.

Defendant has taken the position that all of the documents fall into the category of investigatory records compiled for law enforcement purposes, and as such, contain no information concerning plaintiff or Puckett, which is subject to disclosure under the FOIA. Stated differently, defendant has made a blanket denial of plaintiff's request on the ground that all of the information sought is exempt pursuant to 5 U.S.C. § 552(b)(7)(A) (1976) ("Exemption (7)(A)"), which provides:

(b) This section does not apply to matters that are—

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (a) interfere with enforcement proceedings[.]

Defendant acknowledges that an agency must ordinarily justify the invocation of an FOIA exemption from specificity; however, because of the special nature of Exemption (7)(A), defendant contends that its burden is less rigorous. Defendant asserts that, on the basis of the materials submitted, the Court can and should make a generic determination that the release of the disputed documents would likely interfere with the pending enforcement proceedings, and, therefore, they need not be produced. Defendant points out that plaintiff seeks the records regarding himself and Puckett primarily to obtain information for use at his criminal trial. Thus, according to defendant, a generic determination regarding the files will serve the purpose of Exemption (7)(A), which is to "prevent harm to the Government's case in court by not allowing a litigant earlier or greater access to investigatory files than he would otherwise

have." Freedom of Information Act and Amendments of 1974, Pub.L. 92–502, Source Book, Joint Committee on Printing, 94th Cong., 1st Sess. at 332–333 (statement of Senator Hart).

█ Having examined the defendant's affidavits, and having considered the applicable authorities, the Court does not discount the possibility that a generic determination can be made with respect to some or even all of the documents which have been withheld by defendant. However, the Court does not believe that such a determination can properly be made solely on the basis of defendant's assertion that all of the documents at issue fall into the broad category of "investigatory records," or on the basis of the materials currently before the Court.

Defendant places heavy reliance for its position on *Moorefield v. United States Secret Service*, 611 F.2d 1021 (5th Cir. 1980). Therein, appellant, who had twice been convicted for threatening the life of the President of the United States, sought access to the file maintained on him by the Secret Service. *Id.* at 1022. The agency denied the request in toto, on the ground that all of the information contained in the file was exempt under one or more of the FOIA exemptions. It did not give particularized justification for its decision. The district court approved the denial, but did so without indicating which exemptions were applicable. The Fifth Circuit made a generic determination under Exemption (7)(A) that disclosure of Moorefield's file would likely interfere with enforcement proceedings, and affirmed the decision, without requiring the agency to set forth its specific objections to disclosure, and without requiring the district court to make a finding with respect to each document claimed to be exempt.

*Moorefield* bears certain similarities to the case at bar. However, it is distinguishable in one crucial respect. Unlike the case at bar, the contents of Moorefield's file had been made available to the courts. The district court examined the file *in camera* before sustaining the agency's denial. *Id.*

at 1023. The Fifth Circuit stated in the course of its opinion:

> The documents in the Moorefield file are plainly "investigatory records" prepared for "law enforcement purposes." [citation omitted] They include background and other matters specifically relevant to Moorefield, and were prepared to help the Service fulfil its duty ... [of] ensuring the lives and safety of the President, members of his family, and certain other people.

*Id.* at 1024 (footnote omitted). From this description, it is reasonable to infer that the Fifth Circuit, like the district court, had first hand knowledge of the contents of the file.

Thus, while it is clear that the Fifth Circuit did make a generic determination that disclosure of Moorefield's file would likely interfere with enforcement proceedings, it is also readily apparent that the determination was based on a familiarity with the actual contents of the disputed file, and not on the agency's general and abstract description thereof. In this Court's opinion, *Moorefield* is, therefore, inapplicable, and does not support the type of "sight unseen" generic determination which defendant urges the Court to make in the case at bar.

Nor does *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the lead case on Exemption (7)(A) generic determinations, support defendant's underlying assertion that it has provided the Court with adequate foundation to resolve this FOIA dispute. In *Robbins*, the respondent employer, who had been charged with various unfair labor practices, sought pre-hearing disclosure of the statements of witness whom the Board intended to call at the hearing. *Id.* at 216, 98 S.Ct. at 2314. The Court rejected the position taken by the Court of Appeals, and urged by the respondent, that the Board was required to make a particularized showing of likely interference by disclosing these statements. After reviewing the legislative history of Exemption (7)(A), the Court stated:

Congress did not intend to prevent federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of *particular kinds of investigatory records* while a case is pending would generally "interfere with enforcement proceedings."

*Id.* at 236, 98 S.Ct. at 2324 (emphasis added).

The Court then considered the precise question presented, namely, "whether the Board has met its burden of demonstrating that disclosure of potential witnesses' statements at this time 'would interfere with enforcement proceedings.'" *Id.* The Court weighed "the strong presumption in favor of disclosure under the FOIA against the likelihood that disclosure at this time would disturb the existing balance of relations in unfair labor practice proceedings ...." *Id.* Acknowledging that "reasonable arguments can be made on both sides of this issue," *id.*, the Court held that "witness statements in pending unfair labor practice proceedings are exempt from FOIA disclosure at least until completion of the Board's hearing." *Id.*

The generic determination made in *Robbins* is significantly more narrow than the one sought by defendant in the case at bar. The *Robbins* Court neither held nor intimated that investigatory records, *in general*, are inherently likely to interfere with an enforcement proceeding, and therefore, fit under Exemption (7)(A). On the contrary, the Court determined that the pre-hearing disclosure of witness statements—a particular kind or genre of investigatory records—would likely interfere with the Board's *pending enforcement proceeding* against respondent. There was no question or controversy over the kind or genre of documents involved because the respondent's request had been very specific. This is far different than the present case, where the request is much more extensive, and the documents withheld have not been classified with particularity.

▪ Because defendant has not indicated how many documents are actually involved in this case, and because its description of

its files and records is, at best, abstract and conclusory, this Court is in no position to make any generic determinations at this time. Additionally, the dearth of information in the present record makes it impossible for the Court to make an informed, responsible and truly *de novo* determination of whether the documents have been properly withheld, under Exemption (7)(A), or any of the other FOIA exemptions. In order to sustain its burden, defendant must do more than reiterate the reasons given to plaintiff for denying his request, *see*, Affidavit of Weinstein, and must also do more than give a generalized breakdown of the documents, without also giving some indication of how many documents fall into the various categories and how disclosure of these kinds of documents would likely interfere with the pending enforcement proceedings. *See*, Affidavit of Stanard.

■ Simply stated, defendant has, as yet, failed to meet its burden of proving that the documents have been properly withheld under Exemption (7)(A) or under any of the other FOIA exemption provisions. On the other hand, because it appears that at least some of the documents which have been withheld may be of a highly sensitive nature, the untimely disclosure of which could compromise the pending enforcement proceeding and/or the rights of third parties, the Court is not prepared at the present time to grant plaintiff's motion and to order that the documents be disclosed en masse. Rather, the Court believes that before it can meet its statutory obligation under 5 U.S.C. § 552(a)(4)(B), to make a *de novo* determination, defendant must be given the additional opportunity to meet its burden by providing more particularized information about the documents at issue.

Several procedures have been employed by the courts in acquiring the information necessary to resolve an FOIA dispute. The most common approach seems to be the one developed in *Vaughn v. Rosen*, 484 F.2d 820, 826–828 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). This procedure was approved by the Senate Committee which proposed the

1974 Amendments. S.Rep.No. 93–854, 93d Cong., 2d Sess. 15 (1974). In *Vaughn*, the Court required the agency to formulate an index of the disputed documents. The *Vaughn* procedures were succinctly reiterated in *Ray v. Turner*, 587 F.2d 1187, 1191–92 (D.C. Cir. 1978):

> (1) A requirement that the agency submit a "relatively detailed analysis [of the material withheld] in manageable segments." "Conclusory and generalized allegations of exemptions" would no longer be accepted by reviewing courts . . . 484 F.2d at 826. (2) "[A]n indexing system [that] would subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification." . . . 484 F.2d at 827. This index would allow the district court and opposing counsel to locate specific areas of dispute for further examination and would be an indispensable aid to the court of appeals reviewing the district court's decision. (3) "[A]dequate adversary testing" would be ensured by opposing counsel's access to the information included in the agency's detailed and indexed justification and by *in camera* inspection, guided by the detailed affidavit and using special masters appointed by the court whenever the burden proved to be especially onerous . . . 484 F.2d at 828.

■ The *Vaughn* approach has at least two laudatory features. It eliminates the necessity of conducting an *in camera* review of the documents, which, for a variety of reasons, can be a burdensome expenditure of judicial time and resources. It also, to a certain extent, prevents undue disclosure of documents which fit under one or more of the FOIA exemptions. On the other hand, as pointed out in several authorities, and as asserted by defendant herein, a detailed index can "be a cure as perilous as the disease." *Kanter v. IRS*, 433 F.Supp. 812, 820 (N.D.Ill.1977); *Tarnopol v. FBI*, 442 F.Supp. 5, 9 (D.D.C.1977). Because the Court agrees that making a *Vaughn* index available to plaintiff could seriously compromise the pending enforcement proceed-

ing, the Court had decided to adopt the solution developed in *Kanter v. IRS,* and utilized in *Tarnopol v. FBI.*

In *Kanter,* the Court was faced with a situation similar to the case at bar, in terms of the sparsity of information initially supplied by the agency to the Court. The Court described the state of the record as follows:

[T]he government has not summarized *each* document or portion thereof at issue, nor has it filed any indexed description of the withheld material accompanied by explicit affidavits articulating the basis of the withholding. In essence, the government has not enabled the court to go beyond the labels which the defendant seeks to apply to the documents, to the basic question of how exemption (7)(A) applies to *each* withheld document.

433 F.Supp. at 821 (emphasis in the original). Recognizing that a *Vaughn* index "would enable the astute defendants in the criminal case to divine with great accuracy the identity and nature of the information in the possession of the prosecution," *id.* at 820, the Court settled on a modified *Vaughn* approach, one which did not require the index to be disclosed to the plaintiff. The Court explained:

The method of a detailed index was devised by the court in *Vaughn* . . . for the benefit of the court rather than the plaintiffs. There is no reason why the court cannot consider such an index *in camera,* thereby preventing undue disclosure to the plaintiffs. While *in camera* consideration will deprive the court of the benefit of plaintiff's critique of the index, it does have certain advantages. It is preferable to the laborious task of scrutiny of the documents themselves. Furthermore, a properly drawn index will summarize documents, and put into relief their fundamental facts and importance. An index will also focus the court's attention on the basis of the government's claim that each document is covered by exemption 7(A).

*Id.* at 823–24.

Based on this reasoning, with which this Court wholeheartedly agrees, the *Kanter*

Court ordered the agency to prepare a detailed index for *in camera* inspection, with the following explicit instructions:

[1] The index shall itemize and summarize in sufficient detail each document or portion of a document for which the exemption is claimed. This shall include information referring to the origin and source of the document, as well as a brief statement of its contents.

[2] The index shall further justify the claimed exemption by a brief notation of the ground upon which it is believed that disclosure would interfere with enforcement actions.

[3] With respect *to documents provided* by potential witnesses and confidential information, the index shall state with as much specificity as necessary the grounds upon which it is felt that reasonably segregated or edited portions thereof may not be released.

[4] The government shall also provide a separate index of all withheld documents deriving from or relating to any unauthorized or illegal investigative activities, or activities which were arguably without legal justification.

*Id.* at 824–25.

This Court is of the opinion that the approach outlined above will satisfy its need for information from which to make a *de novo* determination, and will also meet the concerns expressed by the defendant. Therefore, the Court will order the defendant to submit for *in camera* inspection within twenty (20) days of this Decision and Entry a detailed index of its records and files concerning both plaintiff and Puckett consonant with the instructions set forth in *Kanter. See also, Vaughn v. Rosen, supra.* In light of this ruling, the Court overrules the parties' cross motions for summary judgment at this time.