**DON RAY DRIVE–A–WAY COMPANY OF CALIFORNIA, INC., Plaintiff,**

v.

**Samuel K. SKINNER, Defendant.**

**Civ. A. No. 91–1720.**

United States District Court,
District of Columbia.

Feb. 24, 1992.

William E. Kenworthy, Washington, D.C., for plaintiff.

Fred E. Haynes, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

All that plaintiff still seeks in this Freedom of Information Act ("FOIA") case are several documents in which the Federal Highway Administration ("FHWA") describes and implements the computer algorithm it relies on to weight the various factors used by it to determine a motor carrier's safety rating. The issues are before the Court on cross motions for summary judgment that have been fully briefed. No material facts are in dispute.

### Background

Pursuant to statute, FHWA has promulgated procedures for determining the safety fitness of motor carriers subject to its jurisdiction. *See* 49 U.S.C.App. § 2512; 49 C.F.R. § 385. In the course of a Safety Review ("SR") or a Compliance Review ("CR"), FHWA agents inspecting a carrier fill out a form that contains 75 questions relating to specific aspects of safety compliance. Based on that information, FHWA then assigns the carrier one of three safety ratings: satisfactory, conditional, or unsatisfactory. Those ratings are used by FHWA as an indication of how carefully certain carriers need to be monitored. In addition, however, under the Motor Carrier Safety Act of 1990, if a carrier has not made corrections to its record sufficient to remove an "unsatisfactory" rating

within 45 days, it is automatically prohibited from transporting certain hazardous materials or more than 15 passengers, *see* 49 U.S.C.App. § 1814; and under Department of Defense regulations, a carrier with an "unsatisfactory" rating from FHWA may not haul freight for the Department of Defense, *see* 55 Fed.Reg. 7361.

The factual findings made by FHWA in response to the 75 questions are shown to the carrier being inspected, and may be challenged in subsequent proceedings under the regulations. *See* 49 C.F.R. § 385. What may not be challenged is the actual calculation of the safety rating, because the algorithm used to compute the rating is secret. The algorithm works in this fashion. Once FHWA has received from its inspector the responses to the 75 questions, it feeds those responses into a computer. The computer then assigns each of the responses various weights, according to a pre-programmed algorithm, and calculates the safety rating according to whatever facts are finally determined after any challenge to the inspector's findings. Plaintiff seeks the algorithm to learn what weight the agency assigns the 75 factors it considers in determining a safety rating. Defendant has withheld documents that would reveal the contents of the algorithm on the grounds they are "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), and that they "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions ... [that] could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E).

### Discussion

The central issue relating to the withheld documents is the nature of the safety ratings system. The agency characterizes the ratings as a mere tool in the investigation and enforcement of safety violations that allows the agency to "focus its attention on those carriers who are having the most serious safety problems." Def. Memo. at 18. Indeed, the ratings do serve that function. Carriers who receive a satisfactory

rating are simply provided with information on how to maintain their good record, while carriers with lower ratings may be subject to more frequent reviews and a more concerted effort by the agency to assure that they improve. Nonetheless, the ratings also have been given legal effect by subsequently enacted statutes and regulations. Being adjudged "unsatisfactory" has certain immediate results, and those results include actions by agencies other than the FHWA to bar "unsatisfactory" carriers from certain types of work.

The fact that the agency provides a right to the carriers to appeal the factual findings of the inspectors filling in the SR and CR reports does not render the algorithm a mere internal or purely investigatory matter. The weighting of the various factors is crucial to the carriers' understanding of why they are being assigned a particular legal status. Without that information, their right to appeal the agency action is severely impaired, in that they will not know the reason for their rating and hence cannot direct their attack to facts crucial to a successful appeal. A person should not have to guess why he is being punished, even if the government ultimately says that the punishment is attributable to one or more of several reasons.

Despite FHWA's protestations to the contrary, disclosing the algorithm will not facilitate circumvention of the law by the carriers. On the contrary, knowing the agency's priorities will allow the carriers to concentrate their efforts on correcting what the agency considers the most serious safety breaches. If the agency decides that certain of the violations that are currently not accorded much weight by the algorithm are actually more important to safety, then it can simply alter the algorithm to reflect that fact or reduce the threshold necessary to impose a lower rating. Shrouding the process in secrecy and thereby keeping the carriers guessing as to why, when, and whether they will be banned from certain activities is not an acceptable solution to the agency's proper concern over severe budgetary restrictions.[1]

The agency has not met its burden of showing that the documents withheld fall within a FOIA exemption. *See* 5 U.S.C. § 552(a)(4)(B). The algorithm is not purely internal because its effect and the legal status it imposes on carriers are adopted by other agencies without any further analysis or discretion. *See* 5 U.S.C. § 552(b)(2); *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1073–74 (D.C.Cir.1981). The algorithm may not define new safety violations, but it does determine whether and to what extent certain violations will have any legal effect or carry any legal penalty. Thus, the algorithm does not simply involve investigative techniques or procedures. *See* 5 U.S.C. § 552(b)(7)(E). It is regularly followed in all ratings; it controls final agency action subject to review; and it has the same status as regulations or agency law. As such, FOIA offers no exemption. The documents listed in defendant's *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) index as items 3(e), 4, 5, 6, 7, and 8 must be released.[2]

An appropriate Order accompanies this Memorandum.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that plaintiff's motion for summary judgment is granted; and it is further

ORDERED that defendant's cross-motion for summary judgment is denied; and it is further

---

**1.** According to defendant, there are more than 225,000 interstate motor carrier companies, and approximately 20–25,000 companies enter or leave the market each year. Meanwhile, FHWA has only 350 agents responsible for conducting the reviews of carrier compliance.

**2.** Defendant listed various other documents in the *Vaughn* index that were being withheld based on other FOIA exemptions. Plaintiff has not moved to have those documents disclosed or challenged their withholding.

ORDERED that defendant shall turn over to plaintiff the documents listed in defendant's *Vaughn* index as items 3(e), 4, 5, 6, 7, and 8; and it is further

ORDERED that the complaint is dismissed.