**HARRISON BROTHERS MEAT PACKING COMPANY,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

Civ. No. 84–1576.

United States District Court,
M.D.Pennsylvania.

Feb. 27, 1986.

Clifford A. Rieders, Williamsport, Pa., for plaintiff.

Timothy B. Haney, U.S. Atty's. Office, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

The Court now considers Plaintiff's motions (a) for a "Vaughn Index" of all documents requested by Plaintiff which have been withheld or censored in part by the Defendant; (b) for an award of costs and fees pursuant to the work expended in furtherance of its motion for said "Vaughn Index"; and (c) for summary judgment that the withheld documents be released in their entirety or, in the alternative, *in camera* review of the pertinent documents and an Order directing Defendant to release to Plaintiff whichever of these documents or parts thereof may not properly be withheld under the terms of the Freedom of Infor-

mation Act (hereinafter FOIA), 5 U.S.C. §§ 552 *et sequentia*. These motions have been timely briefed by the parties and are now ripe for decision.

Plaintiff is a meat packing company which received notification from Defendant Department of Agriculture (hereinafter USDA) that it would be subjected to more stringent than usual regulation pursuant to an "Action for Intensified Regulatory Enforcement" (hereinafter IRE). Plaintiff contends that USDA's decision to impose these intensified requirements has resulted in grave hardship (although there is no particularization as to what this hardship entails) and that USDA has not or will not explain why Plaintiff has been placed in this status. Plaintiff further contends that if USDA would reveal particulars as to why Plaintiff was singled out for heightened regulation Plaintiff would be in a better position to rectify whatever problems there may be with its operation. When repeated requests for said information from USDA did not bear fruit,[1] Plaintiff filed this lawsuit hoping to compel release of the data which USDA has refused to voluntarily relinquish on the basis that it is material of a type which should be exempted from disclosure under FOIA.

### Preliminary Discussion

The USDA has taken the position that it need not disclose information which it has characterized as "Specification 1" information.[2] This information is further categorized as an IRE plan (10 pages) and a compilation of the daily logs of the meat inspectors assigned to monitor Plaintiff's operation (1,125 pages). The USDA asserts that it may appropriately withhold this information pursuant to 5 U.S.C. § 552(b)(2) which provides that a federal agency may withhold production of documents which are "related solely to the internal personnel rules and practices of an agency."[3] Our task, as a result, would

---

1. Plaintiff asserts that it exhausted its administrative remedies before filing this lawsuit. See Docket Item 21 at page 4.

2. See Affidavit of Catherine M. Deroever, Docket Item 23 at paragraph 3.

3. This exemption from the general policy of disclosure which FOIA is designed to foster [See

seem to be to interpret how wide an array of data a federal agency may shield under the ambit of the phrase quoted in the previous sentence.

### Applicable Case Law

The United States Court of Appeals for the District of Columbia Circuit (hereinafter DCC) has long been on the leading edge of interpreting the parameters of what a federal agency must disclose and may withhold consistent with the terms of FOIA. Indeed, Plaintiff's motions for the "Vaughn Index" and costs associated therewith are based upon a DCC case, *Vaughn v. Rosen*, 484 F.2d 820 (1973), which has given its name to the index Plaintiff seeks. *Vaughn*, supra, is the seminal case to address the issue of how much information the government may withhold despite the liberal disclosure policy underlying FOIA.

*Vaughn* manifests concern for the fact that "... the present method of resolving FOIA disputes actually *encourages* the Government to contend that large masses of information are exempt, when in fact part of the information should be disclosed." [4] Two reasons were cited as factors in promoting Government obfuscation:

> *First,* there are not inherent incentives that would affirmatively spur government agencies to disclose information. Under current procedures government agencies *lose* very little by refusing to disclose documents. At most they will be put to a court test stacked in their favor, the burden of which can be easily shifted to another by simply averring that the information falls under one of several unfortunately imprecise exemptions ...
> *Secondly,* since the burden of determining the justifiability of a government claim of exemption currently falls on the

court system there is an innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information. Let the Court decide! And the tactical ploy is, to the extent that the number of facts in dispute are increased, the efficiency of the court system involved in that dispute resolution will be decreased. *Vaughn* at 826.

The bottom line in *Vaughn* was that the government was not permitted to maintain that a "morass of material" was exempt from disclosure in a conclusory fashion. The burden was placed on the government to specify in detail which portions of a document are disclosable and which are allegedly exempt. The government was further required to index any documents which it claims it may withhold so that a Court in the process of reviewing the merits of that position might conduct said review more expeditiously. As a final note, the Vaughn Court, per Judge Wilkey, declared:

> The procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate. Our decision here may sharply stimulate what must be, in the final analysis, the simplest and most effective solution—for agencies to voluntarily disclose as much information as possible and to create internal procedures that will assure that disclosable information can be easily separated from that which is exempt. Vaughn at 828.

Subsequent cases in the DCC have struggled mightily with the question of how expansive Congress intended Exemption 2 to be.[5] Resort was made in these cases to

---

GTE Sylvania, Inc. v. Consumers Union of United States, 445 U.S. 375, 385, 100 S.Ct. 1194, 1200, 63 L.Ed.2d 467 (1980) ] is commonly referred to as "Exemption 2" and will hereinafter be referred to as "Exemption 2".

**4.** *Vaughn,* supra, 484 F.2d at 826.

**5.** We refer to *Jordan v. United States Department of Justice,* 591 F.2d 753 (1978) and to *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (1981).

the legislative history in both the House and the Senate with the former being beneficial to the various federal agencies and the latter being beneficial to parties seeking disclosure. Little guidance has been provided, however, as to whether an agency has met its responsibility to produce a Vaughn Index where, as here, 1135 pages of material are alleged to be exempt because, pursuant to the rationale of *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* supra, footnote 5, disclosure "may risk circumvention of agency regulation". Stated another way, if a regulated party knows the specific criteria an agency uses to regulate, said party may adroitly be able to gear its operation to create the appearance of compliance without the substance.

### Disposition Of The Present Case

Against what we must say is an amorphous background of case law as to (a) what constitutes a Vaughn Index and (b) what data may be shielded by the government pursuant to Exemption 2 of FOIA, we have recently been made aware that USDA has been made a Defendant in another lawsuit (Middle District of Pennsylvania Civil No. 85–1197) filed by the instant Plaintiff. This other lawsuit is a class action brought on behalf of all meat packing companies who have been placed in IRE status "as a result of Defendant's improper and unlawful promulgation of the Intensified Regulatory Enforcement (IRE) program".[6] The 1135 page document which Plaintiff has been seeking in this case has been made available *in toto* by the government pursuant to Plaintiff's request for production of these and other documents in the aforementioned class action.[7]

USDA asserts that Plaintiff's quest for these documents in our case has become moot as a result of the government's offer to make these documents available for copying at the Office of the General Counsel of USDA in Washington, D.C. USDA cites *Webb v. Department of Health and Human Services,* 696 F.2d 101, 106 (D.C.Cir.1982), for the proposition that, "Granting full access to the requested documents ... terminates a FOIA action (except possibly for attorney's fees)."

Plaintiff disagrees and states:[8]

Here, there is some question as to whether "full" and equivalent access was accorded by Defendant's action in Civil No. 85–1197, as the "relief" in the form of access granted may not have been as great as the access obtainable herein.

.     .     .     .     .

Presumably a decision granting Plaintiff's claims for release of the documents in the instant case would have produced disclosure of copies at $.10 per copy delivered by mail or other carrier to Plaintiff (or Plaintiff's representative). This is arguably a more complete form of relief than the disclosure tendered in Civil No. 85–1197.

Thus, Plaintiff contends that this controversy is hardly moot since the relief proposed by the government is not as extensive as the relief requested.[9]

As far as this Court is concerned, it is ludicrous for the government to assert mootness at this stage of this litigation because it has suddenly, and inexplicably, decided to make available the very data which it had contended was sacrosanct since this action was filed on November 21, 1984. This Court, as a result, views with a jaundiced eye any assertion that USDA acted responsibly in terms of FOIA and the cases which have discussed Exemption 2 therein. As Plaintiff noted,[10] the very case USDA relies on to make its argument that this case is moot makes the disclaimer that, even where the government has granted access to material it had previously tried to shield, the issue of attorney's fees remains

---

6. See Docket Item 22 at paragraph 16.

7. *Id.* at paragraph 19.

8. *Id.* at pages 7 and 8.

9. We surmise that Plaintiff is concerned about the cost involved in sending someone to the nation's capital to procure the data which has suddenly become available.

10. See Docket Item 22 at page 7.

viable.[11] Since we agree with Plaintiff's position that the issue of attorney's fees remains viable, we must now consider the question whether Plaintiff's position is meritorious.

■ The policy underlying the statutory authorization for attorney's fees to complainants who prevail in FOIA suits is to encourage private persons to advance the national interest in disclosure of government documents; however, Congress did not mandate awards for every successful litigant but left the matter to the discretion of the courts. See 5 U.S.C. § 552(a)(4)(E); also *Cox v. U.S. Dept. of Justice*, 601 F.2d 1, 15–16 (1979). The government argues that Plaintiff has not become a "prevailing party" by virtue of the fact that the government has elected to supply the information Plaintiff sought here in connection with what the government terms "an unrelated civil action".[12] We find this characterization of M.D.Pa.Civil No. 85–1197 to be dubious at best.[13] To find whether a party has substantially prevailed in a suit under 5 U.S.C. § 552, a court should consider whether prosecution of the action could reasonably be regarded as necessary to obtain the information and whether the action had substantial causative effect on delivery of the information. See *Clarkson v. I.R.S.*, 678 F.2d 1368 (1982). Moreover, a party may be considered a prevailing party in this context even without procuring a court order forcing the agency to disclose the document sought. *Crooker, supra.*

■ We find that, in view of the government's refusal to accede to Plaintiff's administrative requests, it is reasonable to conclude that this lawsuit was necessary and, in light of recent developments, that it had a substantial causative effect on forcing access to the information sought. We find, too, that the tenacity Plaintiff displayed in pursuing the data now mysteriously being offered in this "unrelated civil action" was a substantial, if not the primary, reason why the government agreed to relinquish the IRE plan and log books it had so zealously sought to protect in the instant case. In other words, but for the battle that had been waged over this information in this case, we do not believe Plaintiff would have obtained it in the subsequently filed case via a simple request for production of documents. Thus, we shall exercise the discretion vested in this Court by 5 U.S.C. § 552(a)(4)(E) to grant Plaintiff's motion for costs and attorney's fees in this case.[14]

■ Turning to Plaintiff's motion for summary judgment, we note that we would never have granted it without going through the *in camera* process suggested in *Vaughn*. Defendant's recent decision to release the contested documents *in toto* gives this Court serious concern as to whether the long struggle waged over them was prompted by a legitimate government concern that they were worthy of protection under Exemption 2. There is a hint of "stonewalling" by the government here which is repugnant to FOIA and we would be remiss in our duty to effectuate Congressional intent if we did not take some action to discourage such behavior by a government agency. To this end, we find

11. *Webb v. Dept. of Health and Human Services,* supra.

12. See Docket Item 20 at page 2.

13. M.D.Pa.Civil No. 85–1197 is brought by the instant Plaintiff against the instant Defendant and concerns near identical subject matter.

14. Although we can find no opinion of the Third Circuit Court of Appeals on when attorney's fees may be awarded in a FOIA action, the Third Circuit has a well-established procedure to aid district courts in determining when such fees may be awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412. That procedure is set out in *Dougherty v. Lehman,* 711 F.2d 555 (3d Cir.1983). It provides that a position taken by the government is substantially justified and, thus, will require that the other party bear its own attorney's fees, even where said party has prevailed, unless there was no reasonable basis in law and fact to support the government's position. We can discern no reasonable basis in law or fact for the position USDA took in this case and believe that a grant of attorney's fees here comports with legal principle developed in the Third Circuit.

true what USDA has already implicitly acknowledged to be true: that no portion of the 1,135 pages USDA had sought to protect from disclosure in this case was material of a type which merited such treatment. Accordingly, we shall grant Plaintiff's motion for summary judgment. An *Order* consistent with the foregoing analysis follows.

## ORDER

AND NOW, this 27th day of February, 1986, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for a "Vaughn Index" is denied because subsequent parts of this Order render such relief superfluous.

2. Plaintiff's motion for summary judgment is granted.

3. The United States Department of Agriculture is directed to produce and mail to the Plaintiff the documents sought herein.

4. The United States Department of Agriculture is directed that it may charge no more for the reproduction of these documents than it might appropriately charge for documents of similar scope which it routinely produces without the provocation of a lawsuit.

5. Plaintiff's motion for the costs and attorney's fees expended in maintaining this lawsuit is granted.

6. The amount of said costs and fees must be documented in order that this Court may subsequently authorize the *reasonable* amount of this award pursuant to formulae in use in the Third Circuit.

7. Plaintiff shall notify the Court as to the amount claimed for its attorney's fees and shall itemize in detail the request so that this Court may assess its reasonableness within twenty (20) days of the date of this Order.

8. The Government shall file any objection to said request within ten (10) days of its submission.