**Howard S. ABRAMSON, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGA-TION, et al., Defendants.**

Civ. A. No. 77–2206.

United States District Court,
District of Columbia.

July 1, 1983.

Sharon Nelson Abramson, Washington, D.C., for plaintiff.

Barbara L. Gordon and Robin M. Stutman, U.S. Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., and Stanley S. Harris, U.S. Atty., Washington, D.C., were on brief, for defendants.

OPINION

CHARLES R. RICHEY, District Judge.

This Freedom of Information Act case is before the Court on remand from the Court of Appeals, following affirmance of this Court's decision by the United States Supreme Court in *FBI v. Abramson,* 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). The Supreme Court, reversing the Court of Appeals, agreed with this Court that certain information contained in a group of "name check" summaries and attachments compiled for the White House by the FBI were exempt from disclosure under Exemption 7(C) to the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C). The Supreme Court held that information contained in records originally compiled for legitimate law enforcement purposes did not lose its exemption from disclosure by being reproduced in the name check summaries, which were not compiled for legitimate law enforcement purposes. After the Supreme Court remanded to the Court of Appeals, plaintiff persuaded the Court of Appeals that he had never conceded that the information underlying the name check summaries and the attachments thereto was in fact compiled for legitimate law enforcement purposes. The Court of Appeals therefore remanded the case to this Court to determine whether Abramson had ever made such a concession. The Court of Appeals stated that, if there was no such concession,

> "it is the agency's burden to establish that the requested information originated in a record protected by Exemption 7," *FBI v. Abramson,* 102 S.Ct. 2054, 2064 (1982), and the District Court should determine whether this burden has been satisfied by applying the standards set forth ... in *Pratt v. Webster,* 673 F.2d 408 (D.C.Cir.1982).

*Abramson v. FBI,* No. 79–2500 (D.C.Cir. Nov. 28, 1982). In this Court, the parties filed motions for summary judgment directed to these inquiries, which the Court shall now decide.

## I. THERE IS A DISPUTE WHETHER THE INFORMATION UNDERLYING THE NAME CHECK SUMMARIES WAS ORIGINALLY COMPILED FOR LEGITIMATE LAW ENFORCEMENT PURPOSES.

In accordance with the Court of Appeals' direction, this Court first set out to determine whether plaintiff had conceded that the information underlying the name check summaries and attachments had been compiled for legitimate law enforcement purposes. *Although defendants pointed to an unrebutted affidavit on this question that they had submitted in the original proceeding in this Court,* plaintiff argued strenuously that he had never conceded the question in either that proceeding or any of the subsequent appellate proceedings. After the Court suggested to the parties that they confer amongst themselves in an effort to resolve the matter, the parties returned to Court and stated that they definitely *did* disagree whether the information underlying the name check summaries was originally compiled for legitimate law enforcement purposes, and that this should be the sole question for the Court to decide. Thus, the Court has proceeded to address this question using the formulation articulated by the Court of Appeals: whether defendants have met their burden of establishing that this information was in fact originally compiled for legitimate law enforcement purposes.

## II. DEFENDANTS HAVE MET THEIR BURDEN OF ESTABLISHING THAT THE UNDERLYING INFORMATION WAS ORIGINALLY COMPILED FOR LEGITIMATE LAW ENFORCEMENT PURPOSES.

In making the determination whether defendants have satisfied their burden of establishing that the information underlying the name check summaries was originally compiled for legitimate law enforcement purposes, the Court of Appeals directed this Court to apply the standards set forth in *Pratt v. Webster,* 673 F.2d 408 (D.C.Cir.

1982). As defendants have hastened to point out, *Pratt* dictated the application of a "deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law enforcement agency," such as the FBI. *Id.* at 418. The decision stated that "a court can accept less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement." *Id.*

*Pratt* also set forth a two-part test against which an agency's assertion of law enforcement purpose should be gauged:

(1) "the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security."

(2) "the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality."

*Id.* at 420–21. Defendants argued that they have satisfied the first prong of this test by tracing each and every individual segment of information withheld from the summaries pursuant to Exemption 7, identifying the type of investigation and the dates upon which the withheld portions of information were obtained, and attesting to this information by affidavit. Defendants contend that they have satisfied the second prong of the test by attesting to the fact that the deleted information was originally compiled for law enforcement purposes, and by identifying the type of law enforcement investigation involved as either a background investigation for appointment to office, an investigation to determine if a person had violated federal criminal law, or an investigation to obtain information leading to the arrest of a person violating federal criminal law. Defendants also maintain that the affidavit they have submitted in support of their withholding is far more specific than that sanctioned by the Court of Appeals in *Pratt.*

Plaintiff, on the other hand, contends that defendants have satisfied neither the first nor the second prong of the *Pratt* test.

Plaintiff argues that defendants have failed under the first prong of the test because they have not identified "a particular individual or a particular incident as the object of [their] investigation and the connection between that individual or incident and a possible security risk or violation of federal law." 673 F.2d at 420. Plaintiff also maintains that defendants have failed under the second prong of the *Pratt* test because their descriptions of the investigations in which the deleted information was obtained are implausible in light of the personal histories of the individuals investigated. Plaintiff also argues that the descriptions most recently offered by defendants are at variance with descriptions they previously gave to the Court.[1]

■ In resolving these conflicting claims, it is important to note precisely what information is in issue here. As defendants point out, the only information in dispute here is that withheld pursuant to Exemption 7(C),[2] which exempts information contained in law enforcement records the disclosure of which would cause an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). In this case, the information deleted pursuant to Exemption 7(C) appears in the name check summaries on Adam Walinsky, John Kenneth Galbraith, Cesar Chavez, and Paul Schrade. Examining these deletions one by one, it becomes clear that defendants have met their burden of proof in establishing the validity of nondisclosure.

■ Looking first at the information deleted from the summary on Adam Walinsky, defendants' affidavit states that this information was obtained pursuant to an applicant investigation of a named third person in 1951, and that it was deleted because it would cast aspersions on the third party's character.[3] Plaintiff objects to this deletion on the grounds that defendants' affidavit does not connect the investigation in which this information was obtained with a particular person or incident, and that defendants' characterization of the investigation is implausible because Mr. Walinsky was only 14 years old at the time the investigation was conducted. In the Court's view, the fact that Mr. Walinsky was only 14 at the time the investigation was conducted does not undermine the plausibility of defendants' explanation. The investigation was not of Mr. Walinsky himself, but of a third person, probably someone he knew or was associated with. It is entirely plausible that a 14-year old would know or have information about someone who was investigated by the FBI. Moreover, it is also entirely reasonable for defendant to withhold the name of the individual under investigation, since that is the very information which, if disclosed, would cause an unwarranted invasion of personal privacy. Public disclosure of the fact that this individual was investigated by the FBI could subject the individual to embarrassment or harassment. Defendants cannot be required to reveal such exempt material in order to establish its exempt status. *Vaugh*

---

1. In response to this last contention, defendants point out that the issue before the Court now is whether the information *underlying* the name check summaries was compiled for legitimate law enforcement purposes, whereas the principal issue previously before the Court was whether the name check summaries themselves had been so compiled. Because of this difference in the issues presented, it is not at all surprising that defendants' contentions should be different now. It should also be noted that plaintiff's own litigation posture has been somewhat inconsistent in that *he never chose to litigate the present issue until after the case was decided by both the Court of Appeals and the United States Supreme Court.*

2. Although numerous redactions were made pursuant to Exemption 7(D), which exempts

from disclosure information contained in law enforcement records the disclosure of which would identify a confidential source, plaintiff does not challenge the invocation of this exemption. To be sure, even if plaintiff were contesting the deletions made under Exemption 7(D), the Court's ruling would be unaffected, since the Court finds defendants' explanations for these redactions to be completely adequate as well.

3. Plaintiff waived his right to one other piece of information deleted from Mr. Walinsky's summary pursuant to Exemption 7(C), in response to defendants' assertion that it contained personal health information.

*v. Rosen,* 484 F.2d 820, 826–27 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Looking next at the information deleted from the summary on John Kenneth Galbraith, defendants contend that this information was originally obtained during the course of an investigation in 1946 to determine Mr. Galbraith's suitability for appointment to office. Plaintiff cannot contend that defendants failed to identify the individual who was the subject of this investigation, but nonetheless does contend that defendants' explanation is implausible because the name check summary itself states that the information in it was compiled in investigations conducted by the FBI in 1941, 1950, 1961, and 1965, not mentioning the year 1946. However, when looked at more closely, the summary goes on to detail numerous federal employment positions that Mr. Galbraith held, including two sensitive positions he assumed for the first time in 1946. It is therefore entirely plausible that the information was obtained in a background investigation that was conducted that year.

Looking finally at the information deleted from the name check summaries on Cesar Chavez and Paul Schrade, defendants state simply that this information was "obtained from investigatory files of the FBI compiled for law enforcement purposes," and that it was deleted because it would release "unverified derogatory information to the public" and might "reveal a confidential source." Affidavit of David Cook, at 11, 15. Defendants state that this explanation is as specific as they can be without revealing the excised information, and that they can submit an *in camera* affidavit providing further elucidation, if needed by the Court. Plaintiff argues that this explanation is inadequate since it does not even demonstrate a colorable basis for the investigation, let alone the person or incident that was the subject of the investigation. Plaintiff also points out that defendants previously claimed that the investigation of Mr. Chavez was one directed to a possible federal appointment. Plaintiff asserts that this explanation is wholly implausible in light of Mr. Chavez's outspoken activities opposing both management and organized labor at the time of the investigation in 1966.

In the Court's view, it is entirely plausible, albeit unlikely, that the Democratic administration of Lyndon Johnson considered Mr. Chavez for a federal appointment in 1966, given his large following among farmworkers at the time. This is a "colorable" explanation for why an investigation was conducted. Moreover, even if it were not colorable, this is not the explanation upon which defendants are relying now to support the redaction of a particular piece of information from the Chavez summary. Defendants state that this particular information, like the piece of information redacted from the Schrade summary, was compiled for legitimate law enforcement purposes, and that it was redacted to prevent the release of unverified derogatory information and the revelation of a confidential source.

■ For a number of reasons, the Court considers this to be an adequate justification for nondisclosure. First of all, it offers a thoroughly laudable reason for nondisclosure—the desire not to reveal unverified derogatory information—that even plaintiff cannot contest. Second, defendants offered to provide more precise information *in camera,* and, at oral argument, the Court expressed interest in receiving an *in camera* submission, but plaintiff argued strenuously against such a procedure, contending that it would not aid the Court. Having thus opposed an opportunity for defendants to provide more specificity, plaintiff cannot now be heard to complain that defendants were not specific enough. Third, nondisclosure of this information is entirely consistent with the direction in *Pratt* that deference should be given to law enforcement agencies seeking nondisclosure under Exemption 7 and that "less exacting proof" is required in order to sustain nondisclosure. 673 F.2d at 418. The Court finds that the explanation offered here is on a par with that

sanctioned by the Court of Appeals in *Pratt.*

CONCLUSION

In sum, the Court concludes that, under the standards set forth in *Pratt v. Webster,* defendants have met their burden of demonstrating that the information underlying the name check summaries was compiled for legitimate law enforcement purposes. Accordingly, the Court shall enter an order, of even date herewith, granting judgment in favor of defendants.