Frank J. SCHWEIHS, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGA-TION, Louis Freeh, individually and as Director of the Federal Bureau of Investigation, and Brian Carroll, individually and as Acting Director of the Chicago Field Office for the Federal Bureau of Investigation, Defendants.

No. 95 C 4734.

United States District Court,
N.D. Illinois,
Eastern Division.

July 17, 1996.

of Investigation ("FBI"), the Director of the FBI Louis Freeh, and the Acting Director of the Chicago Field Office for the FBI Brian Carroll to produce agency records concerning plaintiff that have been allegedly improperly withheld. Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56.[1] For the reasons stated below, the court denies in part and grants in part defendants' motion.

## DISCUSSION

Before addressing the merits of defendants' motion the court will discuss an important procedural matter. In addition to the requirements set forth in Federal Rule of Civil Procedure 56, Northern District of Illinois Local Rule 12(M) requires the movant to file a statement of uncontested facts listing each fact in a separate numbered paragraph, with a citation to the affidavit or other supporting materials that the party relied upon. Local Rule 12(N) requires the opposing party to file a response to the movant's statement of facts, and allows the opposing party to file a statement of additional uncontested facts. All denials and additional facts stated in the opposing party's Local Rule 12(N) statement must cite to an affidavit or other supporting materials relied upon.

█ In the instant case, in his response to defendants' statement of material facts and list of additional material facts, plaintiff did not cite to or file a single supporting document. Failure to comply with the local rules is not merely a "harmless technicality," but can be a "fatal" mistake. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir.1994). The Seventh Circuit has repeatedly upheld the strict application of Local Rule 12. *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992). Based on plaintiff's failure to cite to any documentation in his response to defendants' Rule 12(M) statement, the court deems defendants' facts as admitted for purposes of this motion. *Knox v. McGinnis*, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993). The court notes, however, that

John Thomas Moran, Chicago, IL, for Frank J. Schweihs.

Ramune Rita Kelecius, United States Attorney's Office, Chicago, IL, for F.B.I., Louis Freeh and Brian Carroll.

## MEMORANDUM ORDER AND OPINION

GETTLEMAN, District Judge.

Plaintiff Frank J. Schweihs filed this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to have the court order defendants Federal Bureau

---

1. Also pending is plaintiff's notice and motion to require disclosure of responsive records and to require preparation of a "Vaughn" index of withheld records. Based on the court's ruling on defendants' summary judgment motion, plaintiff's motion is denied.

while it has authority to ignore the unsupported additional facts stated in plaintiff's Rule 12(N) statement, it has considered such facts in this opinion.

Turning to the merits of defendants' motion, defendants move to dismiss plaintiff's claim for lack of jurisdiction, asserting that documents pertaining to plaintiff's request have not been improperly withheld. Alternatively, defendants' move for summary judgment, asserting that the court should allow defendants additional time to that required under § 552(a)(6)(A)(i) to complete review of their records and respond to plaintiff's FOIA request pursuant to § 552(a)(6)(B).

■ While not alleged in the complaint, it is clear from his response to defendants' motion that plaintiff's action was brought to compel disclosure of his FOIA document request within the time limits set forth in § 552, and has no relation to any flat refusal of the FBI to comply with plaintiff's request or a refusal to release certain information. Under these circumstances, when the FBI has not disclosed the documents or denied the request within the time specified in the statute, the applicant is "deemed to have exhausted his administrative remedies, and may then bring suit in the appropriate district court pursuant to Section 552(a)(4)(B)." *Cecola v. Federal Bureau of Investigation*, 1995 WL 549066 *1 (N.D.Ill.1995), *quoting, Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 609–610 (D.C.Cir. 1976).

■ Like the defendants in *Cecola*, notwithstanding this language, defendants have moved to dismiss asserting that the court lacks subject matter jurisdiction over plaintiff's complaint, citing § 552(a)(6)(C) which authorizes the court to "allow the agency additional time to complete its review of the records" when "exceptional circumstances exist and ... the agency is exercising due diligence in responding to the request." As Judge Aspen found in *Cecola*, at *2, defendants' demonstration of exceptional circumstances and due diligence does not deprive this court of jurisdiction, which is clearly vested by the statute when the FBI fails to comply with FOIA's timing requirement.

Accordingly, defendants' motion to dismiss is denied.

■ This does not end the court's inquiry. Under § 552(a)(6)(A)(i), the FBI must determine whether to release plaintiff's requested documents within ten days of receiving the request. On June 21, 1996, plaintiff requested disclosure of records concerning plaintiff dating from January 1, 1960 to the present, from the Chicago field office of the FBI and the FBI in Washington D.C. In several letters dating from September 1994 through June 1995, defendants informed plaintiff that a search was being conducted but that a delay was anticipated due to the considerable backlog of FOIA requests pending in both offices.

Plaintiff filed the instant case on August 16, 1995. Subsequently, in November 1995, the Chicago Field Office notified plaintiff that his Chicago request had been referred to FBI headquarters. In February 1996, FBI headquarters advised plaintiff that approximately 4,500 pages of material had been located pertaining to plaintiff's request; however, the processing of these records had not been completed. Linda L. Kloss ("Kloss"), the managerial paralegal specialist in the FBI, Freedom Of Information Privacy Act ("FOIPA") Section, Request Management Unit at FBI Headquarters ("RMU"), stated in her affidavit that based on the current rate of assignment for review, it is estimated that plaintiff's documents will not be processed for at least three years, eight months from the date it was received and will take at least nine months from that date to complete the review. Based on the date of plaintiff's request, defendants estimate that plaintiff will not receive documents, or a statement of why any documents are to be withheld, until November 1998 or later.

■ Addressing defendants' motion for summary judgment, as noted above, under § 552(a)(6)(C), the court can excuse defendants from compliance with the statutory time limits where exceptional circumstances exist and the agency is exercising due diligence in responding to the request. In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (C.A.D.C.1976), the D.C. Circuit held:

[W]e interpret Section 552(a)(6)(C) to mean that "exceptional circumstances exist" when an agency, like the FBI here, is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.... The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

In the instant case, Kloss represents that the FBI employs approximately 261 FIOPA RMU employees to handle an average of 14,785 document requests annually, in addition to 3,117 administrative appeals and 233 FOIPA lawsuits pending in federal courts. At the end of December 1995, approximately 10,964 requests were being handled by RMU; approximately 5,685 of those requests were in the RMU backlog awaiting assignment for processing, and 4,407 were in various stages of review by disclosure personnel.

In order to administer FOIPA requests, the RMU maintains a two-tiered backlog of unassigned pending requests which are assigned for processing based on the approximate date on which the request was received. Responsive records are examined in the RMU and a determination is made whether to place the request in Track One, which includes requests involving 100 pages or less and requiring minimal review for exemption claims, or in Track Two, which consists of all other cases. Kloss further stated that the FBI has made repeated requests for additional FOIPA funding in its annual budget and has streamlined its procedures to reduce delays. Further, two new initiatives have been developed to increase the complement of qualified FOIPA analysts: a reallocation and retraining of personnel from other sections to work as FOIPA analysts; and a series of training seminars for Field Officer personnel to prepare them for handling some of the backlog in FBI Headquarters.

■ Based on these facts, the court finds that defendants have adequately demonstrated that exceptional circumstances exist, and that defendants are exercising due diligence in responding to FOIA requests. *Cecola,* 1995 WL 549066 *2. In his response, without contesting these conditions, plaintiff questions why the Chicago Field Office sent its documents to FBI Headquarters rather than reviewing the documents itself. Plaintiff further argues that his request should be "moved up the line" by virtue of: (1) having filed a lawsuit; and (2) plaintiff's "exceptional circumstances." In reply to plaintiff's questioning whether sending documents from the Chicago Field Office to FBI Headquarters was used as a dilatory tactic, defendants filed an affidavit of James Krupkowski ("Krupkowski"), an FBI Special Agent assigned to the Chicago Filed Office as the Field Privacy Control Officer/Chief Division Counsel.

In his affidavit, Krupkowski stated that there is an FBI-wide policy for referring for processing to FBI Headquarters FOIA Section files for which there are corresponding FOIA files where there are corresponding but not identical FBI Headquarters files. This practice ensures consistency in processing and avoids duplication of effort. Krupkowski further stated that there are only three paralegal specialists in the Chicago office, of which only one is experienced. In light of its manpower situation and the amount of requests, Krupkowski attests that the Chicago Field Office has a substantial backlog of its own.

Addressing plaintiff's assertion that his request should be moved up the line, plaintiff relies on *Exner v. Federal Bureau of Investigation,* 542 F.2d 1121, 1123 (9th Cir.1976), in which the Ninth Circuit held that "the filing of suit by a person demanding information can (but does not necessarily) move such petitioner 'up the line,' i.e., create a preference, particularly if a Federal Court orders it."

The court respectfully declines to follow this part of the holding in *Exner.* As Judge Grady held in *Caifano v. Wampler,* 588 F.Supp. 1392, 1394 (N.D.Ill.1984):

Although this might appear to be the easy way to handle such cases, we think it simply shoves the problem under the rug. The effect would be to 'vault' plaintiff's request over the requests of other individuals who were ahead of him in the FOIA line but who did not seek judicial relief. This would unfairly prejudice those other individuals, and we will not do that.

■ The final issue raised in plaintiff's response is more troubling to this court. Plaintiff argues that he qualifies for the "exceptional circumstances" exception based on the following factors: (1) plaintiff is approximately 65 years old, and suffering from carcinoma, angina, and kidney disease; and, (2) plaintiff's document request likely contains factual material that is relevant and favorable to him on the criminal charges for which he was convicted[2] and on the character and reputation of William "Red" Wemette, a witness who testified against plaintiff at his criminal trial.[3] Plaintiff asserts that "he is suffering from serious disease [sic] and that, coupled with the drive in Congress to limit habeas relief, in a very real sense, could render plaintiff's efforts to overturn his conviction nugatory or procedurally barred."

Defendants concede that the FBI makes exceptions from its first in/first out policy in processing FOIA requests under the following circumstances: (1) an individual's life or safety would be jeopardized by the failure to process a request immediately; (2) substantial due process rights of a requester would be impaired by the failure to process immediately and the information sought is not otherwise available; or, (3) there exists widespread and exceptional media interest in the requested information and expedited processing is warranted because the information sought involves possible questions about the government's integrity which affect public confidence.

Addressing plaintiff's first alleged "exceptional circumstance," defendants explain that the FBI's first exception permits a requestor to jump to the head of the line only when delay in obtaining documents would *cause* his or her life or safety to be jeopardized, which is not the issue in the instant case. Plaintiff is not attempting to assert that the documents contain information that would expose a threat to his life or safety. Further, defendants assert that taking such sympathy factors into account in each case would place the court in the impossible position of having to rank each requester by the condition of his or her health and life expectancy. It is undisputed that there are 2,000 individuals waiting for information ahead of plaintiff in the FOIA line.

There is no legal precedent or statutory or regulatory authority for prioritizing FOIA applicants by age or health status. One can make credible arguments for either side of the equation: the importance of a speedy response to a young applicant who is facing prosecution or beginning to serve a sentence; or an older applicant's desire to bring closure to an inquiry before death moots the effort. In light of the facts of this case, the court finds that plaintiff's health and age do not constitute "exceptional circumstances." Absent some compelling reason, therefore, this court cannot overrule defendants' first in/first out method of handling FOIA requests.

■ The remaining issue is whether plaintiff's due process rights will be impaired if his request is not processed immediately and there is no other means for plaintiff to gain access to the materials. On this point, plaintiff's argument fails to establish an exceptional circumstance. First, plaintiff concedes that during his trial the FBI turned over documents to the prosecuting Assistant United States Attorney, and as plaintiff noted in

**2.** In September 1989, a federal jury found plaintiff guilty of conspiracy involving the extortion of "street taxes" from William Wemette and Leonard Cross, two Chicago business owners. *United States v. Schweihs*, 733 F.Supp. 1174 (N.D.Ill. 1990). Plaintiff received and is currently serving the eighth year of an enhanced sentence between 108 and 135 months for, among other things, his connection to organized crime and his leadership role in organized criminal activity. *See, United*

*States v. Schweihs*, 1993 WL 189620 (N.D.Ill. June 3, 1993), *affm'd*, No. 95–1974, 83 F.3d 424 (7th Cir. April 29, 1996) (Rule 53 order/unpublished opinion).

**3.** These facts are stated without evidentiary support in plaintiff's Local Rule 12(N) statement of material facts.

his motion for the court to take judicial notice of the Anti–Terrorism and Effective Death Penalty Act of 1996, there is reference in the Seventh Circuit's opinion upholding plaintiff's re-sentence that plaintiff's trial counsel made repeated requests for *Brady–Giglio* disclosures regarding witnesses against plaintiff at trial. In the Seventh Circuit's unpublished opinion, the court states that "during trial pertinent materials from the FBI were tendered" to plaintiff's counsel. *Schweihs,* 95–1974 at 7.

Defendants further assert that by filing a habeas corpus petition under 28 U.S.C. § 2255, plaintiff can seek discovery of any materials that would be of assistance by asking the court for access to exculpatory documents.[4] In his motion to take judicial notice, in answer to certain arguments in defendant's reply, plaintiff states that he believes that the requested FBI documents may contain information that Wemette told an FBI Special Agent certain specific information that would have been relevant in plaintiff's criminal case to cross-examine the subjective feelings of Wemette, who was considered a "victim" at plaintiff's trial. Plaintiff does not, however, address that plaintiff previously obtained all *Brady–Giglio* FBI materials during his trial, or defendants' argument that he can obtain any such specific requests for exculpatory materials through his § 2255 habeas corpus petition.

Based on the undisputed facts before it, the court finds that plaintiff has failed to state exceptional circumstances that warrant "vaulting" plaintiff's request over the thousands of requests that are ahead of plaintiff awaiting FBI FOIA information. As noted by our brethren in this district, the court is in a troubling position and at this time can only direct that defendants "continue to work diligently and expeditiously in a good faith

manner to respond to plaintiff's requests." *Caifano v. Wampler,* 588 F.Supp. 1392, 1394 (N.D.Ill.1984); *see also, Cecola,* 1995 WL 549066 *2 (dismissing the plaintiff's action as it related to documents requested from FBI headquarters finding that the FBI demonstrated exceptional circumstances and was exercising due diligence in light of a projected six year delay in responding to the plaintiff's request).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied and defendants' motion for summary judgment is granted. The court, therefore, dismisses plaintiff's action with leave to reinstate.[5]

---

4. Defendants note that at the time of the briefing of this motion, plaintiff had not filed such a motion.

5. The court dismisses rather than retains jurisdiction over plaintiff's case because as of the date of this motion defendants have not denied plaintiff's document requests and it is unclear whether a ripe or justiciable dispute between the parties will occur at a later date. *Caifano,* 588 F.Supp. at 1395 n. 3. For this reason, the court denies without prejudice plaintiff's motion for an indexing pursuant to *Vaughn v. Rosen,* 484 F.2d 820

(D.C.Cir.1973), *cert. den.,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), because the motion is premature at this time, as a *Vaughn* index serves to summarize claims of privilege concerning a large bulk of documents. *Antonelli v. Sullivan,* 732 F.2d 560, 562 (7th Cir.1983). In the event that defendants withhold documents based on privilege claims and plaintiff objects to such actions and wishes to obtain an indexing, he may file a motion to reinstate this case. *Caifano,* at 1395 n. 3.